HEARD APRIL TERM, 1878.

CASE No. 661.

### THE STATE v. ROBERT SMALLS.

1. Numbers 2, 3 and 11 of the syllabus in *State* v. *Cardoza,*[*] re-affirmed.
2. A defendant under prosecution in a state court is not entitled to have the cause removed to the Circuit Court of the United States, under Section 641 of the Revised Statutes of the United States, (p. 114,) under a petition for that purpose alleging the existence of prejudice against him on account of his race and color and other causes, and alleging further, without any more specific statement of facts, that he is denied, and cannot enforce in the judicial tribunals of the state where he is being tried, the rights secured to him by the laws of the United States.
3. An indictment for bribery against a member of congress is not arrested by the privileges secured to representatives by Article I, Section 5, of the Constitution of the United States.
4. The corrupt acceptance of a gift and gratuity and of the promise to make a gift, are not inconsistent, and there is no duplicity in so charging in a count of an indictment for bribery.
5. An indictment is not defective for repugnancy, because it charges the corrupt acceptance of a bribe to vote for "a question which was and might be, by law, brought before" the defendant as state senator.
6. In an indictment charging the acceptance of a bribe by a state senator to vote for a certain joint resolution, it is sufficient to designate the joint resolution by its title only.
7. Journals of the state senate, published under the requirement of Article II., Section 26, of the Constitution, are the highest legal proof of the pendency of a matter before that body at any particular time.

---

*See <em>ante</em> page 195.

8. Where an accomplice testified that he had paid a bribe to defendant by giving to him a check on a certain bank, payable to cash or bearer, which had afterwards been returned by such bank to witness, it was competent for the state, in corroboration, to show by the books and business memoranda of this same bank, a credit to defendant for a like amount deposited by check two days after the alleged bribery.

Before TOWNSEND, J., at Richland, October Term, 1877.

This was an indictment for bribery, committed by defendant, as a state senator, in December, 1872. True bill was found by the grand jury at October Term, 1877, of the Court of General Sessions for Richland county. The indictment contained five counts. The first count charged that the defendant did, on December 18th, 1872, " corruptly accept from Josephus Woodruff a gift and gratuity and a promise to make a gift and do an act beneficial to him," a state senator, " under an agreement and with an understanding that the vote, opinion and judgment " of defendant should be given in favor of a joint resolution appropriating money for public printing—" a question which was and might be by law brought before " said defendant, as a state senator. The second count varied from the first in the charge that the defendant did " corruptly accept from J. W. a promise to make a gift and to do an act beneficial to him, the said Robert Smalls, to wit, a promise to give him, the said R. S., a large sum of money, to wit, the sum of five thousand dollars, under an agreement," &c. The third count varied from the second only in the use of the words " with an understanding," instead of " under an agreement." The fourth count changed the phraseology to " corruptly did accept a promise from J. W., to make a gift of five thousand dollars to him, the said Robert Smalls, with an understanding," &c.; and the joint resolution was charged to have been " then introduced and pending in the general assembly of the said state, and was to be brought before him, the said R. S., in his official capacity," &c. The fifth count was for corruptly accepting a gratuity in payment for a vote already given, and is laid at common law. The first four counts are brought under act of 1869, Section 2. 14 *Stat.* 308 ; *Gen. Stat.*

725, § 10. In the first four counts the joint resolution is set out only by its title, to wit: "Joint resolution to make appropriation for expenses of printing ordered by the general assembly during the regular sessions of 1870–1, and 1871–2." In December, 1872, Robert Smalls was senator from Beaufort county, and chairman of committee on printing. Josephus Woodruff was clerk of the senate, and a member of the Republican printing company, by whom the public printing was done.

The case being called for trial on November 7th, 1877, defendant submitted the following petition:

*To the Honorable the Court of General Sessions for the County of Richland, in the said State:*

The defendant in this cause, Robert Smalls, humbly petitioning, shows unto your honorable court that he has been indicted by the grand jury of this county, and is now held under bail to answer in this court to indictment for the alleged crime of receiving a bribe in his official capacity, to influence his acts in the office of state senator of South Carolina, on or about the eighteenth day of December, in the year of our Lord eighteen hundred and seventy-two, as is more fully set forth in the said indictment; that of all and each of said crimes and offences set forth in said indictment, this defendant, upon his oath, solemnly declares he is not guilty, and is only desirous to have the trial thereof before an unprejudiced, fair and impartial court and jury that this defendant is a person of color, and was formerly a slave, and was afterwards a captain and pilot in the service of the United States; that the offence charged in the said indictment, relating to his action as such state senator, has been the subject of much comment, both in private conversation among the citizens of the county and in several of the public newspapers published and largely circulated in the said county, from the residents of which the jury have been summoned for this trial; that by the laws of the United States of America, as well as the constitution and laws of the State of South Carolina, he is entitled by right to trial by a fair and impartial jury, who shall pass upon the offence charged between him and the state without bias or prejudice; that he is informed, and believes that great prejudice

exists against him on account of his race, color and previous condition of servitude, so that he cannot have a fair and impartial trial in this honorable court, by reason of political excitement, and by reason of the prejudice excited against him by articles published in the newspapers; that at the general election held in this state, on the seventh day of November, eighteen hundred and seventy-six, this defendant was elected a representative of the fifth district of the State of South Carolina in the house of representatives of the United States, to hold his seat as such in the forty-fifth congress of the United States, and that he has been admitted to said seat by the said house of representatives of the said congress, but a contest for his said seat is being prosecuted, and now exists, by one George D. Tillman, who claims to have been elected representative of the United States from said district to said congress. And your petitioner verily believes that the said prosecution on the indictment above set forth is incited against him by a conspiracy to prevent him, by intimidation, from holding an office under the United States, and from discharging the duties thereof; and, by the same, to injure him in his property, and to molest, interrupt, hinder and impede him in the discharge of his official duties; and that said indictment is prosecuted with intention to deprive him of his rights, privileges and immunities secured by the constitution and laws of the United States, to which, as a citizen of the United States, he is entitled. And, further, your petitioner verily believes that by reason of the said contest for his said seat as a representative as aforesaid, there is an intense prejudice against this defendant in the minds of a large number of the residents of the said county, who differ in political associations with this defendant.

And your petitioner further shows that he verily believes that he cannot have a fair and impartial trial of the said cause before the Honorable C. P. Townsend, Circuit judge, now presiding in the said court; that he believes that the mind of the said judge is prejudiced against him by reason of his race, color and previous condition of servitude; that his belief is founded in the rulings and charge of the said judge, in a certain cause wherein F. L. Cardoza, a person of the same race and color of this de-

fendant, was tried on indictment for a conspiracy to cheat the State of South Carolina, at this term of the said court.

And your petitioner further shows that for the reasons above stated, and for other reasons more at large, to be shown in the proper court, he is denied and cannot enforce in the judicial tribunals of the part of the state where the said prosecution is pending, the rights secured to him by the laws providing for the equal civil rights, as citizens of the United States, of all persons within the jurisdiction of the United States; that the said cause on indictment aforesaid against this defendant has not been tried or finally heard by this court.

Wherefore, the said defendant, Robert Smalls, files this petition in this honorable. court, before the trial or final hearing of the cause, verified by his oath, and prays that the cause here pending be removed to the Circuit Court of the United States for the District of South Carolina for trial, and that all proceedings in this honorable court shall cease, and shall not be resumed unless he, the said Robert Smalls, shall be denied copies of said process against him, and all depositions, indictment, pleadings and other testimomy in the case, so that he cannot file them in said court on the first day of the session of the said Circuit Court of the United States, or shall fail to prove the refusal or neglect of said clerk of this court so to furnish said copies, and a certificate of such refusal or neglect, under the seal of said court, shall be given and produced in this honorable court.

And your petitioner, Robert Smalls, doth verify the facts by him stated, by his solemn oath appended hereto, administered by a proper officer for administering oaths for said State of South Carolina. And as in duty bound, your petitioner will ever pray, and so forth.

ROBERT SMALLS.

[Signed and verified.]

The motion was refused, and defendant excepted.

On November 9th the case was again called for trial, when defendant submitted the following affidavit and prayer for discharge:

Robert Smalls, the defendant above named, being duly sworn, says—That on the seventh day of November, eighteen hundred and seventy-six, at a general election held in the State of South Carolina, he was elected a representative to hold a seat in the house of representatives of the United States in the forty-fifth congress, from the fifth congressional district of South Carolina; that on the fifteenth day of October, eighteen hundred and seventy-seven, he was admitted to a seat in the said congress and was sworn in as such officer; and but for the proceedings and prosecution in the above-entitled case, would now be in Washington attending to his duties as such officer; and he is of right entitled to all the privileges and immunities given to him by the constitution, and laws of the United States as such officer; that shortly before the session of the forty-fifth congress of the United States, which assembled in the city of Washington, D. C., on the fifteenth day of October, eighteen hundred and seventy-seven, he was arrested on the charge of accepting a bribe, which, under the laws of the State of South Carolina, is a misdemeanor other than a breach of the peace; and on the eighth day of October, eighteen hundred and seventy-seven, was required to enter into a recognizance to appear at the present session of this honorable court; that at the present term of this court an indictment has been preferred against this defendant upon the said charge, and he has been compelled, from day to day, to appear before this court, and now is before this court, under its process, in violation of the constitution and laws of the United States, to answer the charge of the said misdemeanor; and by reason of the said proceedings and prosecution, he is compelled to be absent from his seat in the said house of representatives of the United States.

Wherefore he prays that he be hence discharged.

(Signed) .                    ROBERT SMALLS.

Sworn to 9th day of November, 1877.

The court refused to discharge the defendant and he excepted.

The juries were organized for the term, as stated in *State* v. *Cardoza,* next preceding case.*    Jury No. 2 was called to try the case.    The state challenged one juror for cause and two per-

---

*Ante* p. 195.

emptorily.   Martin and two others were then drawn from the supernumerary list.   The defendant challenged Martin peremptorily.   The court ruled that defendant did not have the right to challenge jurors drawn to fill vacancies on the panel; to which ruling defendant excepted.   Defendant then challenged a juror of the original panel, and one from the supernumerary list was drawn in his stead.

Attorney-General Conner offered in evidence Journal of the Senate, 1872–3.   Mr. Melton, counsel for defendant, objected, and, his objection being overruled, excepted.

Josephus Woodruff, witness for state, testified that in consideration of the vote and influence in the senate of the defendant, in favor of a joint resolution appropriating money to pay for public printing, witness agreed to pay defendant $5000.   That in pursuance of such agreement, witness gave to defendant, on January 16th, 1873, a check worded thus:

584, No. 17.                    COLUMBIA, S. C., Jan'y 19, 1873.
South Carolina Bank and Trust Company, of Columbia, pay to cash or bearer, five thousand dollars.
$5000.                                            J. WOODRUFF.

That check was dated a few days ahead, and its written date fell on Sunday.   It was paid by the bank and returned to witness at the end of the month with his other checks drawn during the month.   Witness was allowed to refresh his memory by referring to a memorandum-book, written in phonographic characters; defendant objected, because the book was intelligible only to witness, and excepted.   Witness said the senate kept no permanent journal; only the printed journal.

L. M. Zealy, assistant bookkeeper of the South Carolina Bank and Trust Company, was offered as a witness to trace the above check through the bank.   Defendant objected to the books of the bank being used against defendant, and his objection being overruled, excepted.   Witness said this check was charged to Woodruff January 18th, 1873.   Same day $5000 is put to credit of defendant, and was checked out on 8th of February.   No other check that day charged to Woodruff or credited to Smalls. Figures 584 on check were put there by witness, and refer to page

of ledger. On page 584 of ledger is the entry of this check paid on W.'s account. When deposits were made it was the custom of the bank to require deposit slips. Witness produced the following, found among the papers of the bank:

S. C. BANK & TRUST COMPANY,
Deposited by                    COLUMBIA, S. C., Jan. 18, 1873.
Hon. Robert Smalls.

| Gold | $ | |
|---|---|---|
| Currency | $ | |
| Check, W. | 5000 | |
| Total | | |

The deposit-slip is in handwriting of F. S. Jacobs, then cashier of the bank, who has been absent from the state since 1873. The letter W is in pencil, also his handwriting, and indicates the person who drew the check. Defendant objected to all the testimony relating to this deposit-slip.

The defendant was found guilty.

A motion for a new trial and in arrest of judgment was made in the Circuit Court, and severally refused. Defendant was then sentenced to be confined in the state penitentiary, at hard labor, for the period of three years.

Defendant appealed upon the following grounds:

The defendant having appealed from the judgment of the court herein, will move before the honorable the Supreme Court of the said state, for an order reversing the decision of his Honor Judge Townsend refusing the motion in arrest of judgment herein; and for an order in arrest of judgment upon the grounds in the said motion specifically stated and set forth—that is to say:

1. That prior to the trial herein, a petition was filed in this court praying that this cause be removed from this court to the next Circuit Court of the United States, to be held in the district where this cause is pending, upon grounds and because of facts therein stated, and that, thereupon, by virtue of the statute of the congress of the United States in such case made and pro-

vided, all further proceedings in this court should have ceased, and the jurisdiction and authority of this court to try this cause, ceased and determined. ·

2. That prior to the trial herein, on the ground set forth by affidavit filed in this case, that the defendant is a member of the house of representatives of the congress of the United States, then and now in session, and that therefore the trial herein is in breach of the privileges of the defendant as such member, this court is without jurisdiction and authority to pronounce judgment herein.

3. That the jury rendering the verdict herein was not a legal and competent jury, and was not drawn, summoned, and impaneled according to law; in this, that to fill the deficiency in the number of jurors required by law, the names of five persons were drawn from an apartment of the jury box separate from the apartment containing the legal and proper lists of jurors prepared at the time and in the manner prescribed by statute. That the jury commissioners of the said county were not authorized by law to place the names of jurors in such separate apartment and to draw therefrom " the jurors to supply the deficiencies " in the regular panel, and, therefore, the jurors so drawn from such separate apartment were not in law competent to act as jurors; and that the defendant was denied his right to peremptorily challenge jurors who had been called to take the place of other jurors removed from the panel by challenge, although the challenges provided for by law in his behalf had not been and were not exhausted.

4. That the first count of the indictment herein is fatally defective for duplicity ; in this, that in the statement of the crime therein charged against this defendant, is included several offences separate, distinct, and different each from the other ; and for repugnancy, in this, that the " question " is therein set forth in inconsistent terms as " a question which was and might be by law brought before the said defendant," and so forth.

5. That the second count of the indictment is fatally defective for repugnancy ; in this, that the " question " is therein set forth in inconsistent terms as a "joint resolution which was and

might be by law brought before him, the said defendant," and so forth.

6. That the *third* count of the indictment herein is fatally defective for repugnancy; in this, that the joint resolution is therein set forth as a "joint resolution which was and might be by law brought before him, the said defendant," and so forth.

7. That the *fourth* count of the indictment is fatally defective; in this, that the description of the joint resolution and the time when introduced and pending, and to be brought before him, the said defendant, and so forth, are not stated with sufficient precision, clearness, and certainty—being without averment of era or year, or of numbers in words as required by law.

8. That the *fifth* count of the indictment herein is fatally defective; in this, that it does not set forth and charge a crime under the laws of this state.

And failing herein, the defendant will move before the honorable the Supreme Court of this state, upon the grounds stated and specifically set forth in the motion for new trial made before his Honor Judge Townsend for an order reversing the decision of his Honor Judge Townsend refusing the said motion, and for an order setting aside the verdict of the jury, and reversing the judgment of the Circuit Court herein, and granting a new trial, upon the grounds set forth in the motion in arrest of judgment aforesaid, and upon other and further grounds—that is to say :

1. Because the court erred in denying to the defendant the right of peremptory challenge, as to a juror, William T. Martin, who had been drawn and placed upon the panel in the place of a juror removed by peremptory challenge on the part of the state, although the defendant's right of peremptory challenge had not been exhausted.

2. Because the court erred in permitting a witness, Josephus Woodruff, to refresh his memory by reference to a book purporting to be a diary written in phonographic characters, peculiar to the witness and of his own invention; and because the court erred in admitting in evidence the entries said to be contained in the said diary, and allowing them to be translated by the said witness and read to the jury.

3. Because the court erred in admitting in evidence the contents of a printed book, purporting to be a copy of the journal of the senate for the session of the general assembly of this state for 1873–'74, and allowing extracts therefrom to be read to the jury as evidence competent to show the proceedings of the senate upon the question in reference to the passage of the joint resolution referred to in the indictment, and competent to prove the averment that the defendant had voted in favor of the passage of the said resolution, and had otherwise used his office and influence in that behalf.

4. Because the court erred in admitting in evidence a printed book, purporting to contain copies of the acts and joint resolutions of the general assembly of this state for the session of 1873–'74, as competent to prove the fact and date of the passage of the joint resolution as averred in the indictment.

5. Because the court erred in admitting in evidence the books of a private corporation, known as "The South Carolina Bank and Trust Company," and permitting entries therein in the handwriting of the assistant bookkeeper, to be read and shown to the jury as evidence competent to prove, as against this defendant, that payments were made by the said bank on account of the said Woodruff, and a deposit made to the credit of the defendant of like amount, and the precise dates of such transactions; although it was in evidence that such transactions were not had with the assistant bookkeeper or within his personal knowledge; and although nothing appeared to connect the transaction had with the said bank by Woodruff with the transaction had with the said bank by this defendant; although the person with whom the transactions are alleged to have occurred is alive, and the person who made the entries is alive, examined as a witness at the trial.

6. Because the court erred in admitting in evidence a slip of paper, said to be in the handwriting of one F. S. Jacobs, an officer of the said bank, containing a date, the name of the defendant, and the figures "5000," written in pencil, as evidence competent to prove that, at such date, this defendant did deposit the sum of $5000 in the said bank by way of check; although it was proved that the said F. S. Jacobs is alive, and nothing

was proved to connect this defendant with the said paper, or to refer the said paper to any transaction between this defendant and the said Woodruff.

Several of the points involved in this appeal are identical with questions involved in Cardoza's case, and the argument is the same. Upon other points the two cases differ.

*Mr. S. W. Melton*, for appellant.

The accused having filed his petition for removal of the cause, the jurisdiction to try the case thereby ceased and determined. *Rev. Stat. of U. S.*, § 641. The rights of the accused are secured by the constitution of the United States, and by Sections 1980, 5510, 5518 of Revised Statutes. The state court could not construe the statute; that belongs to the United States courts. 1 *Wheat.* 304; 6 *Wheat.* 264; 6 *Wall.* 247.

This first count is double. 1 *Bish. on Crim. Proc.*, §§ 432, 441; *State* v. *Howe*, 1 *Rich.* 260.

The second and third counts are bad for repugnancy. 1 *Bish. on Crim. Proc.*, § 572.

The joint resolution is not set forth with sufficient precision and certainty. 1 *Bish. on Crim. Proc.*, §§ 344, 346.

The printed senate journal was improperly received in evidence. 2 *Whart. on Ev.*, §§ 290, 295.

*Mr. C. R. Miles*, contra.

The defendant does not state, but it is manifest that a removal of the cause is claimed under Section 641 of the Revised Statutes of the United States. This was a part of the legislation intended to apply only to states which failed to guarantee, by legislation, the civil rights conferred by the constitutional amendments and acts of congress. It cannot apply to South Carolina. 16 *Wall.* 36; 2 *Otto* 542; 13 *Wall.* 581. Moreover, he does not state facts which show that he is denied any rights in the state tribunal. Nor could the United States courts try him under this charge if the case was removed.

He claims a privilege as a member of congress. *Const. U. S.*, *Art. I.*, § 6. When arrested he was not in attendance on con-

S

gress, going to it or returning from it.  *Bright. Dig.* 3, *note (c)*. His presence is not required, for the charge is 'a misdemeanor, and he is under bond.  The privilege of members of congress is the same as members of parliament.  See 1 *Bla. Com.* 166 ; *Story on Const.*, § 865 ; *Cush. L. & P. Leg. As.*, §§ 559–563.

The indictment is framed under Section 2 of act of 1869, (*Gen. Stat.* 725) and follows its words.  2 *Strob.* 474 ; 1 *McM.* 472 ; 3 *Strob.* 269 ; 1 *Bish. on Crim. Law*, § 785 ; 1 *Whart. on Am. Crim. Law*, § 295 ; 1 *Bail.* 144 ; 1 *McM.* 236.

The joint resolution being only a question brought before defendant in his official capacity, it is sufficiently described by its title, certainty to a common intent only being necessary.  .2 *Bail.* 70 ; 3 *Rich.* 68 ; *Id.* 174.

The printed journals were admissible to prove the vote of the senator and the date and passage of the joint resolution.  1 *Greenl. on Ev.*, § 482 ; 1 *Archb. Crim. Prac. & Pl.* [145], *note* 1 ; *Const. of 1868, Art. XI.*, § 26 ; *Cooley on Const. Lim.* 135 ; *Cush. L. & P. Leg. As.*, § 428 ; 4 *S. C.* 430 ; 2 *S. C.* 150.

Acts and joint resolutions require no proof.  1 *Archb. Crim. Prac. & Pl.* [141] ; 1 *Greenl. on Ev.*, § 479.

The evidence objected to was properly admitted in corroboration of Woodruff.  1 *Greenl. on Ev.*, §§ 120, 379, *et seq.* ; 3 *Strob.* 517 ; 32 *E. C. L. R.* 507.

*Mr. J. D. Pope*, in reply.

The defendant has been convicted and sentenced—(1) before a jury without title to his office ; (2) by a jury illegally impaneled ; (3) upon evidence that should have been excluded ; (4) under an indictment defective in form and substance ; and (5) by the uncorroborated testimony of an accomplice, who has confessed his own guilt and proved himself to be steeped in vice and crime.

Could the defendant be convicted upon the uncorroborated testimony of the accomplice, Woodruff ?  It was so, once.  Then, *some* corroboration was required of the circumstances of the case. Next, it was considered that there should be at least corroboration of the identification of some of the accused to convict others not identified ; but the injustice of this was soon recognized by the rulings of the courts.  Finally, it was agreed that a judge should

· charge the jury that the accomplice should be corroborated, as to the material circumstances of the case, as to the personal identity of the accused, and, if more than one, of all—and as to the *corpus delicti,* the essence of the crime charged. *Roscoe's Crim. Ev.* 121, 122; *Archb. Crim. Prac.* 154; *Phil. on Ev. (part 2 of notes)* 1504–1510.*

Juries are not judges of the *sufficiency* of evidence; whether evidence is corroborative at all is a question of law for the court. Can a judge say to a jury, "If the jury believe the evidence of the accomplice, that alone is sufficient to authorize a verdict of

* MAY TERM, 1867.

STATE v. WINGO.

In 1867, Abel Wingo was convicted of hog-stealing in the Court of General Sessions, Spartanburg county, before Hon. Thomas W. Glover, presiding judge. An appeal was taken upon the ground that the conviction rested upon the uncorroborated evidence of an accomplice.

The opinion of the Court of Appeals was delivered by

DUNKIN, C. J. In Mr. Philips' Treatise on Evidence, pp. 110–112, the rule is thus stated: after premising that the testimony of an accomplice should be received with great jealousy and caution, because, among other things, they stand contaminated with guilt by their own confession, and are sometimes entitled to a reward upon obtaining a conviction, Mr. Phillips says: "The doctrine of a conviction being legal upon the unsupported evidence of an accomplice has been greatly modified in practice, and it has long been considered as a general rule that the testimony of an accomplice ought to receive confirmation, and that, unless it be corroborated in some material part by unimpeachable evidence, the presiding judge ought to advise the jury to acquit the prisoner."

The report of the presiding judge does not state his instructions to the jury, nor was it necessary under the specific grounds of appeal. It cannot, therefore, be affirmed that the verdict was illegal, although unsustained by any evidence except that of an accomplice in the crime, and whose general character would seem to impair his credibility. On the other hand, the character of the defendant, both as an honest man and good neighbor, was sustained by the witnesses. It is true that to judge of all this was the proper province of the jury, upon which this court has neither the right nor the disposition to encroach. But in the absence of distinct information as to the charge of the judge, the infirmity of the testimony adduced, and the grave consequences to the defendant of conviction of an infamous offence, the court have determined that neither the rules of law nor the purposes of justice would be impaired by submitting the case to another jury.

The motion for a new trial is granted. REPORTER.

guilty?" See 3 *Strob.* 508; *Shars. Stark. Ev.* 727; *Phil. on Ev.*, *part* 2, *notes*, 1510, *and part* 1, *notes*, 16–22; 2 *Russ. on Cr.* 960–962. Test this instruction by following authorities. 1 *Greenl. on Ev.* 426; 2 *Russ. on Cr.* 961, 962; 8 *C. & P.* 157; 6 *C. & P.* 595; 6 *C. & P.* 388; 8 *C. & P.* 106; 7 *C. & P.* 272; 8 *C. & P.* 732.

There was no corroboration of Woodruff. What is corroboration? See 1 *Greenl. on Ev.* 533, § 381, *note;* 2 *Rich. Eq.* 6. The senate journal corroborates only to the extent of identifying defendant with the legislative action, but that is immaterial. *Greenl. on Ev*, *supra.* The cabalistic book was not corroboration of its own author, can add nothing to the testimony of the corrupt creature, who thus corruptly refreshed his corrupt mind by corrupt evidence, and did not corroborate the identity of the defendant as connected with the issue. It was not evidence, because a witness may refresh his mind from a written paper only when such paper is intelligible to some other person, and is open to be tested by a cross-examination upon the paper itself. 1 *Greenl. on Ev.*, § 437, *note.*

In the check to "cash or bearer," there is no corroboration; it might have been handed to any one else just as well. Alderson, B., in 7 *C. & P.* 272, *supra.* Nor does the check presented corroborate the accomplice—it was paid on January 18th, a day before the check proved was in existence. But then the accomplice corroborates the check, and the mysterious book corroborates the corroborator.

There is no corroboration in the deposit-slip, for the defendant is not brought into connection with it. It is not signed by defendant or by Jacobs, and should not have been received in evidence. Jacobs living, no other person could testify to the paper. *Shars. Stark. Ev.* 418, 64, 65; 1 *Sm. Lead. Cas.* 503; 2 *N. & McC.* 331; 4 *Rich.* 52; 7 *Rich.* 66; *Bail. Eq.* 482; 2 *Hill (N. Y.)* 557; *Salk.* 285, *et cet.* This is different from entries in shop-books. 2 *McC.* 157.

The entries in bank-book, are no corroboration. The witness who made them says he knew nothing personally. Of themselves they prove nothing. 4 *Seld.* 170; 4 *Denio* 354.

But every fact proven may be admitted—that Woodruff was

·clerk of the senate, and one of the Republican printing company ; that defendant was a senator ; mover of the joint resolution mentioned ; that he voted for it ; that Woodruff did give defendant a check for $5000, which was paid to defendant at the bank —and still there is no proof of bribery. That charge, the very essence of the offence, is proven by Woodruff alone, uncorroborated by a single person or a single fact.

November 29th, 1879. The opinion of the court was delivered by

WILLARD, C. J. In the case of *State* v. *Cardoza*,* just decided, we have considered and disposed of all the propositions presented by the third ground of appeal from the decision refusing the motion in arrest, and in the first and second grounds for granting a new trial, and they need not be again considered. The remaining questions will be considered in the order in which they stand in the grounds of appeal.

The defendant was indicted for bribery as a member of the senate of this state. Before the commencement of the trial he presented to the Court of Common Pleas a petition for the removal of the cause to the Circuit Court of the United States. He alleges that he is a person of color, was formerly a slave, and was afterwards a captain and pilot in the service of the United States, and that for that reason great prejudice exists against him in the county of Richland, where the indictment was found. He alleges that prejudice exists against him on account of his race, color and previous condition of servitude, "so that he cannot have a fair, impartial trial in this honorable court, by reason of political excitement, and by reason of the prejudices excited against him by articles published in the newspapers. He further alleges that he had been elected a representative to the United .States congress, and was then engaged in a contest of his seat with one claiming to have received such election, and that he believes that the said prosecution on the indictment above set forth is incited against him by a conspiracy to prevent him, by intimidation, from holding an office under the United States, and from discharging the duties thereof, and by the same to

*\*Ante* page 195.

injure him in his property, and to molest, interrupt, hinder and impede him in the discharge of his official duties, and that said indictment, is presented with intention to deprive him of his rights, privileges and immunities secured by the constitution and laws of the United States, to which, as a citizen, he is entitled." He alleges the existence of great prejudice against him in said county, excited through such contest, and that he cannot enforce, in the judicial tribunals of the part of the state where the said prosecution is pending, the right secured to him by the laws providing for the equal civil rights, as citizens of the United States, of all persons within the jurisdiction of the United States.

The removal of the cause is claimed under Section 641 (page 114) of the Revised Statutes of the United States. This section provides that "when any civil suit or criminal prosecution is commenced against any person who is denied or cannot enforce, in the judicial tribunal of the state, or in the part of the state where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction of the United States," such suit or prosecution may, upon the petition of such defendant, filed in the state court at any time before the trial or final hearing of the cause, stating the facts and verified by oath, be removed for trial into the next Circuit Court to be held in the district where it is pending. It further directs that "upon the filing of such petition all further proceedings in the state court shall cease, and shall not be resumed except as hereinafter provided." The section in question extends the right of removal to certain other cases not important to be specially considered at this time, as the construction of the section can be ascertained without particular reference to such omitted portions.

This court is charged with the enforcement of the constitution of the United States, and the acts of congress passed in conformity with it, in cases within its jurisdiction, as effectually as if it had been brought into existence under power created by that constitution. We must settle the construction of the constitution and laws of the United States, subject to revision by the Supreme Court of the United States, whenever a similar duty would be imposed, as it regards the constitution and laws of our own state.

The section in question must be regarded, so far as it concerns criminal prosecutions commenced in a state court for the redress of wrongs committed against the laws of the state, as, in substance, an interdict of such prosecution whenever, by the law governing the court, some right is denied that is secured to the defendant under the constitution and laws of the United States, where such provision is intended to secure equal civil rights among all citizens and persons residing in the United States, and where the deprivation of such right is material to his defence. In this respect there are but two views to be taken of the intended effect of the act of congress over proceedings in a criminal cause, after arresting its course in the state court; one is that the cause shall proceed to trial and judgment in the United States Circuit Court, and the other that it shall cease altogether, or until by some authority, not very clearly pointed out, jurisdiction to proceed shall be restored to the state court. The first-stated of these views is without reasonable support. It assumes that the Circuit Court of the United States can obtain jurisdiction of crimes committed against the laws of the states, and of the penalties imposed therefor by such laws. It would be singular, indeed, if such an extraordinary power should be found to have laid dormant through a century of our national existence, escaping the attention of the ablest jurist. The difficulty in the way of such a jurisdiction is fundamental. What character would such a criminal prosecution obtain on removal into the United States courts? It certainly would not then be a criminal case in the sense contemplated by the constitution and the acts of congress settling the criminal jurisdiction of the Circuit Court. A criminal case, as usually understood under the common law, is a proceeding by a sovereign of a realm in his own courts against one subjected to his authority for a violation of his laws. The United States is such a sovereign, and proceeds in such manner in the courts of the United States clothed with criminal jurisdiction.

The United States courts, as criminal courts, when proceeding by indictment, act only on such cases as are found by grand juries convened under the laws of the United States, and serving in the United States courts alone. Public officers of the United

States conduct and control such proceedings. Beyond doubt, the Circuit Court, as an incident to a civil action properly pending before it, can pronounce a judgment that derives its force wholly under the laws of a state, but that results from a direct grant of such jurisdiction in the constitution of the United States. The constitution confers on the courts of the United States jurisdiction of " controversies " between parties of a certain character. *Const. U. S., Art. III.* In no just sense can a criminal proceeding in the courts of the state be regarded as a controversy as that term is used in the constitution of the United States. So the court of a foreign state can enforce, as between parties subject to its jurisdiction, rights having their origin and sanction only under the laws of another state. No such attempt has ever been made to transplant criminal jurisdiction, and it is inconsistent with the nature of such proceedings. In the constitution of the criminal administration of all civilized states, the functions of justice and mercy are inseparably united. While the administration of justice is committed to one source of public authority, the power of pardon is usually placed in the hands of another. A subordinate authority to control and supersede such prosecutions is placed in some authority, either executive or judicial. Will it be contended that the administration is carried to the courts of the United States, leaving the functions of ameliorating its severity in the hands of the state authorities, or that these attributes are carried over into the same jurisdiction, to be exercised in some manner never pointed out by any constitution, law or precedent? The acts of congress do not attempt to solve the numerous difficulties in the way of such a jurisdiction and we shall not attempt it. It is evident that if it had been the intention of congress to change radically the rules, forms and substantial incidents of the proceedings of the criminal courts of the United States, some evidence of such an intention would have appeared in the acts in question; whereas, nothing of that kind appears. We cannot presume such an intent. It must be concluded that a criminal proceeding, removed into the United States court, if it can proceed at all in those courts, must do so as a civil cause. Such a proposition carries absurdity on its face, and need not be considered. We are compelled, then, to conclude that the object

of the act was to terminate certain criminal proceedings, having their origin under the laws of a state and in the courts of a state, by removing them to a court having no authority to proceed in them. Although this conclusion leaves the relations of the courts of the states and of the United States in an anomalous and unfortunate condition, and may give rise to the inquiry whether any constitutional authority exists in the congress of the United States to interdict proceedings in state courts on grounds involving the integrity of state administration alone, especially when full authority has been granted for the correction of any errors that these courts may commit, on failures to give full force to the constitution and laws of the United States in a court having appellate jurisdiction over the state courts for that purpose, yet we are forced to conclude, by the terms of the act itself, that such was the intention of the body from which it emanated.

Under the view we take of the case, it will not become necessary to examine the authority of congress to reach such a result, as we do not regard the case in hand as coming within the act in question. Considering, then, that the object of the act of congress was to stop proceedings of a criminal character pending in a state court under certain circumstances, it becomes evident that it was only intended that such authority should be exercised when the law of the forum thus invaded does not admit of a defence that involves some ground of right, arising or secured under provisions of the constitution and laws of the United States intended to secure equal civil rights. Assuming, for the purposes of the argument, that congress possesses such powers in any degree, and a reasonable case for its exercise might be imagined when such courts had not the legal measure of power to enforce some right arising under or secured by the constitution and laws of the United States, provided there was no other or better remedy. Such a case might arise when one indicted in a state court, having full right of citizenship under the constitution and laws of the United States, is, by the law of a state, deprived of a standing in the court allowed to citizens at large. If the right of trial by jury, of being confronted by witnesses, or to any of the incidents of a regular and usual arraignment, trial, verdict and judgment allowed to other citizens, be denied such a person,

it may well be said that a tribunal, thus destitute of the means of administering justice in the case, is not entitled to be regarded, under the constitution and laws of the United States, as possessing any competency to act upon the rights of such persons. But even in this case a question would remain whether an adequate remedy is not afforded by the appellate jurisdiction of the Supreme Court of the United States, acting on the proceedings of the court of last resort in the state upon such case, inasmuch as in such an appeal the defendant could well say that he had been denied a right claimed under the constitution and laws of the United States; but that need not be considered. It may be observed that no such defect of authority is alleged or exists in the present case.

On what principle could legislation by congress be carried beyond the point? If such a power exists, it need not be confined to the cases enumerated in the act in question, but may extend to any case when either the prosecution or defence set up in a state court involves any right or modification of right originating under or secured by the constitution and laws of the United States. When, then, it is considered to what extent the laws of the United States enter in some degree into contracts and rights of action and defence, and how extensively they might be made to influence them through the various powers committed to congress by the constitution—notably, of those relating to excise and imports—some conception may be formed of the possible extent of such a jurisdiction. It may be said that it cannot be presumed that congress will stretch a prerogative to its utmost limit, and, therefore, in considering the nature of such a jurisdiction, we ought to have in mind only that idea of it which appears to be reasonable and consistent with the general objects of the constitution. This view, reasonable enough when applied only to the ordinary motives of a legislative body, has no application to cases involving the equilibrium between the different parts of a complex government established by fundamental laws. The constitution of the United States placed the security of the states against federal encroachment on no such low ground. Its principle is to circumscribe and limit the powers that may be detrimental to the rights of the states, and to trust

as little as possible to the assumed principle that rival governments, acting in the same realm or sphere, will be controlled by moderation towards each other. Those who framed that instrument were too well versed in the history of government to entertain such an optimistic idea. If, then, the constitution impresses the important truth that, in maintaining the equilibrium of this complex government, reliance must be had solely in limitations of public authority, the interpretation of that constitution, and of the law passed under it, must be largely influenced by it. If it be conceded that power exists under the act of congress, even to the limited extent already considered, there is still a jurisdiction of incalculable limits, and of sufficient potency to work out material changes in the structure of the government and the equilibrium of its parts. But if the plenary powers contended for by the defendant exist, the equilibrium between the states and the national government, sought so carefully by the constitution, is practically destroyed.

The appellant contends that prejudice, based on his being a person of color, and formerly a slave, in his political opinions and associations, and on the ground of services rendered during the late war to the United States, exist in the country where the indictment was found. Is this a case within the act of congress, assuming the facts to be as stated by him ? If so, then the existence of local prejudice likely to affect the rights of a party prosecuting or defending in a state court is ground for inhibiting such court from exercising its jurisdiction, under the authority of an act of congress, where such prosecution or defence involves any direct or incidental right arising or secured under the constitution or laws of the United States. If the rights of equal citizenship are entitled to this protection, then all other rights of the same origin or sanction are entitled to equal protection. The fourteenth and fifteenth amendments of the constitution, intended to secure equal civil rights in this respect, do not place such cases on higher ground than other rights secured under the constitution. Congress is authorized to enforce such provisions by " appropriate " legislation. By appropriate legislation is clearly meant such legislation as that sanctioned by the instrument at large. Unless, then, such legislation as we have under consideration

would be appropriate in the case of other rights secured under the constitution, it would not be embraced within the intention of those amendments. We are at liberty, therefore, to consider the subject, on general principles, applicable to the constitution at large.

There is no clause in the constitution of the United States that guarantees a just administration of the laws of the states within their proper sphere as affecting rights enjoyed under that constitution, except as that is implied in certain provisions conferring jurisdiction on the federal courts, both original and appellate. The power in question will not be claimed to arise under that claim of jurisdiction; from what source, then, can it arise? There is nothing in the constitution as originally framed, or in the amendments, that can by any process of reasoning be perverted into such a guaranty. The idea of stopping the administration of justice because it is imperfect, has no place among the principles of the law nor the practice of governments. You might as well arrest the action of the heart because the blood is impure. To stop it on the ground that the community surrounding the court, and possibly affecting the purity of its administration, is in a temper unfavorable to a litigant, without any provision for transferring the trial to another part of the same jurisdiction where circumstances of a more favorable character exist, is to acknowledge exhaustion of the capacity and means of government. The application of the views here presented to the case made by the appellant's petition, is so obvious that it needs no particular discussion.

This court held in *Barker* v. *Bowen,* 8 *S. C.* 400, that in order to remove a cause from the state court to the United States Circuit Court, it was necessary that sufficient cause for such removal should appear on the face of such petition. It is not necessary for the purposes of the present case to say whether the facts alleged are traversable in the state court; for the defect is one of law appearing on the face of the petition in the present case. The general statement of the petition that the defendant "is denied and cannot enforce in the judicial tribunals of the part of the state, where the said prosecution is pending, the rights secured to him by the laws providing for equal civil rights as

citizens of the United States of all persons within the jurisdiction of the United States," is insufficient in itself, independent of the ground of fact laid for such a statement. It assumes rather the character of an indictment or impeachment of the tribunal before which one is laboring under a charge of crime, proceeding from the alleged criminal against his sovereign sitting in judgment upon his conduct, than an exception to the right of the court to proceed in the case. If such an anomalous proceeding is to be tolerated as consistent with the practice of civilized communities, the indictment, at the least, ought to be specific and lay a foundation of fact within the act of congress. But where we look into the facts alleged they amount to nothing more than a charge of prejudice existing in the community. If a question of removing the cause for trial to another county had been raised, the court could have looked into the truth of the facts alleged, but this was not the defendant's demand. He selected his own forum, and he must stand by that selection. The prayer of the petition was properly denied.

The privilege of a member of congress was not available and was properly refused. An indictment for bribery is not arrested by such privilege.

There was no duplicity in charging in the indictment that the defendant corruptly accepted a gift and gratuity, and a promise to make a gift. The promise must be regarded as relating to a gift additional to that alleged to have been given and accepted. There is no inconsistency in taking a certain sum and the promise of a further sum, and the indictment must be read in that sense. The charge is not in any sense in the alternative, and is only cumulative as it regards the consideration of the bribe, a single act of corrupt taking being alleged.

The statement that the question of legislation to which the bribe related, "was and might be by law brought before," etc., is without fault. It was merely equivalent to saying that it was brought before him to act upon as a senator in conformity with law. It cannot be referred for explanation to a somewhat similar phrase in the statute constituting the crime, for the latter is in the disjunctive and intended to treat cumulatively the cases to which the crime should apply, while the indictment

alleged only a single case, and uses that language solely to characterize that case.

The joint resolution in regard to which the bribe was alleged to have been offered and received was sufficiently set forth by its title, that being the due and ordinary mode of designating the particular action of the legislature in a given case. The terms of the resolution did not in the least enter into the constitution of the offence. The essence of the crime was the acceptance of a gratuity, or the promise of one "under an agreement" that his vote should be given in a particular manner as to some "question, cause, or proceeding which is or may be by law brought before him in his official capacity." The identity of the "question" is complete with the statement of the title of the measure of legislation that was thus contemplated. The terms of that resolution, as it was finally passed, are immaterial, as they were subject to change after the agreement, for the bribe was complete without changing the identity of the "question" that was the subject of the agreement. This objection to the fourth count is disposed of by what has just been said.

The jury were charged that the fifth count was defective, and therefore the objections to that count need not be considered.

The ground urged for a new trial will next be considered. There was no error in admitting into evidence the printed records of the proceedings of the senate in proof of such proceedings. Article II., Section 26, of the constitution, requires each house to keep and publish a journal of its proceedings. The journals so published are competent evidence to show what matters were pending before the legislative bodies at any particular time, and as that was a matter at issue, it was proper to introduce the journals as the highest legal proof of the fact.

It is not necessary to consider the competency of such proof to establish the fact of an act done by the defendant, as an individual member of the senate, that constituted a material part of the crime charged, for no such question is raised. The evidence being competent for any purpose was properly admitted.

Nor was there error in admitting proof from the books and memoranda of the bank. The state sought to corroborate the testimony of an accomplice by a line of proof that embraced

certain facts, of which one was that a credit had been given to the defendant by the bank in which he kept his account, as upon a deposit of the check paid to him for the purpose of the bribe as alleged by such accomplice. It was competent to prove the fact of such credit being given by the books of the bank. The memorandum alleged to have been made in the ordinary course of business by the officer who received the deposit, and which was intended to show the nature and amount of the deposit, must be regarded as representing the original note or memorandum from which the books were made up, and as such was competent to explain the books. There was accordingly no error in its reception in evidence. As no exception brings before us the legal force of these proofs, that subject need not be considered.

The court having overruled all the exceptions the appeal must be dismissed.

McIVER, and HASKELL, A. J.'s, concurred.

SEPARATE OPINION OF McIVER, A. J. In this case I concur fully in all the conclusions reached by the Chief Justice. I desire, however, simply to indicate the reasons why I think there was no error on the part of the Circuit judge in refusing to allow the defendant the right to challenge peremptorily the juror, William T. Martin. I have already presented these reasons in an opinion just filed in the case of *State* v. *F. L. Cardoza,** and it is unnecessary to repeat them here, but only to refer to them as influencing my judgment in this case. The only difference between the two cases is that, in the case against Cardoza, the defendant, after having been refused the right to challenge peremptorily two of the jurors, *who had been drawn after* the twelve originally presented, actually did exercise the right of peremptory challenge to the full extent allowed by law, by challenging five of the original twelve, while, in the case now under consideration, the defendant did not offer to challenge peremptorily but two of the jurors presented, Stanley and Martin, one of which was allowed and the other disallowed. The peremptory challenge of Stanley was properly allowed, because he was one of the

* *Ante* page 195.

twelve originally drawn and presented, while that of Martin was properly disallowed, inasmuch as he was drawn *after* the original twelve, and, until they had been disposed of, either by acceptance or rejection, the defendant could not reach Martin. Until they were sworn, they could not be regarded as accepted; and, certainly, in this case, it could not be said that they had been accepted by the defendant, for, as the record shows, *after* his challenge of Martin had been disallowed, he *then* peremptorily challenged Stanley, one of the original twelve, thereby demonstrating that he had not accepted all that remained of the original twelve. It is very clear, therefore, that at the time the defendant offered to challenge Martin, who had been subsequently drawn, he had no right to do so; and it does not appear that he attempted to exercise this right *after* those who had been originally drawn were disposed of.

HASKELL, A. J.  I concur in the result. My reasons are stated in a separate opinion filed in the case of *State* v. *F. L. Cardoza.*

Appeal dismissed.