## STATE v. CRAGUN

No. 5116.   Decided December 14, 1934.   [38 P. (2d) 1071.]

*Woolley & Holther,* of Ogden, and *Joseph Chez,* of Ogden, for appellant.

*Geo. P. Parker,* Atty. Gen., and *Byron D. Anderson,* Deputy Atty. Gen., for the State.

EPHRAIM HANSON, Justice.

Defendant was charged under section 8118, Comp. Laws Utah 1917 (now 103-2-1, R. S. Utah 1933), in the district court of Weber county with having employed an instrument in and upon a certain designated married woman, whom we shall call the prosecutrix, with intent to produce a miscarriage. A plea of not guilty was entered. Defendant was convictéd, and appeals to this court.

Four propositions are presented on the appeal:

I. Was there sufficient corroboration of the testimony of the prosecutrix?

The prosecutrix testified that she was a married woman; that she was the mother of two very young children, of which fact she had informed the defendant; and that, when she first went to the defendant's office on the 28th of January, 1930, she was pregnant and, but for that condition, she was in good health; that defendant examined her, and told her that she had been pregnant for about a month. She asked the defendant if there was any medicine that she could take, and defendant replied that medicine would not do any good; that he could perform an operation and she would be all right. He informed the prosecutrix what the operation would cost, and stated that there would be no danger of her being sick, and that he did not blame her for wanting it done.

She returned to the defendant's office on the 4th of February for the purpose of having the abortion performed, and so advised him and paid him a portion of the agreed fee. At that time she was placed on the operating table in the defendant's office; he inserted an instrument into her vagina, and advised her to return the next day, which she did. On the return visit he used the same instrument which he had used before, and advised her that she would be all right. She then paid him the balance of the fee.

Prosecutrix returned again on the 12th of February, and advised defendant that she was not feeling well, and had not yet started to menstruate. He made another examination, and stated that there was a blood clot in the womb, and, after removing that, advised the prosecutrix to go home and take a douche. After leaving defendant's office on that occasion, she went to another physician, who made an examination and advised her that she was pregnant. She returned to the defendant's office and told him what the other physician had said. The defendant thereupon told her that he

would put something in the womb to hold it open, which he did.

On the 15th of February she went to the defendant's office again, this time accompanied by her mother. The two went into the defendant's private office, and he there made an examination of the prosecutrix and told her that her condition was caused by the tipping of the uterus, but that she need not worry, but to go home and see him the following Monday. Prosecutrix and her mother returned on the Monday, when he again examined her and advised her that she was coming down with a cold, and told her to go home and drink lemonade and that everything would be all right.

The mother of the prosecutrix testified that about the 15th of February she went to her daughter's home and saw that she was not feeling very well and accompanied her to the defendant's office. She told the defendant she did not think her daughter was getting along very well, and the doctor replied, "I took out everything that should come out and used a serum so there would be no danger of any infection." That on that occasion he placed the prosecutrix on the operating table, removed her clothing, and used an instrument of some kind in her vagina and that he put something in to hold it open and requested the daughter to return on Monday, the 17th, and that he would then take out what he had put in. The mother accompanied her daughter on that visit, and the defendant at that time told them that the daughter was getting along all right and not to be alarmed.

On cross-examination the mother stated that she did not know of any visits that her daughter made to defendant's office until the 15th of February, when her daughter advised her of what had occurred, that she understood the purpose of going to the doctor's office was for an operation that the doctor had performed for the purpose of procuring a miscarriage, and that on the occasion that she went to the defendant's office with the prosecutrix she saw the defendant pick up an instrument and manipulate it and saw him use it upon the body of the prosecutrix.

There was other testimony tending to show certain admissions made by the defendant. There was also the evidence of other physicians who had examined the prosecutrix subsequent to the first three or four visits which she had made to the defendant's office, which showed unquestionably that prosecutrix was pregnant, and, except for that condition, she was in perfect health and in normal physical condition.

R. S. Utah 1933, 105-32-14, provides:

"Upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein, or for inveigling, enticing or taking away any female of previously chaste character for the purpose of prostitution, or aiding or assisting therein, the defendant shall not be convicted upon the testimony of the woman upon or with whom the offense was committed, unless she is corroborated by other evidence."

We have no difficulty whatever in reaching the conclusion that the testimony of the prosecutrix was sufficiently corroborated.

II. The evidence shows that the prosecutrix requested the defendant to perform the operation, and that she voluntarily submitted herself to him for such unlawful purpose. By so doing, did she become an accomplice in the commission of the crime for which defendant is charged? The defendant requested the court to charge that she was an accomplice. The court declined to so charge but charged that she was not an accomplice. We think the court did not err in so charging. True it is that a defendant charged with the commission of an abortion may not be convicted of such an offense on the testimony of the woman upon whom the abortion is alleged to have been committed, unless her testimony in respect to the commission of the abortion is corroborated by other evidence. But that is so because of the statute above quoted. In the absence of any statutory provision, the defendant may be convicted on the uncorroborated testimony of the woman, as at common law. 1 R. C. L. 87, § 25. It does not follow that, because the woman's testimony must

be corroborated by reason of such statute, she therefore stands in the relation of an accomplice to the defendant charged with the commission of the abortion. Although the testimony of the prosecutrix must be corroborated in order to convict, the reason for requiring the corroboration is predicated on an entirely different hypothesis from that falling within the rule relating to accomplice testimony. 1 C. J. 331 § 111, subd. 2.

R. S. Utah 1933, 103-2-1, provides:

"Every person who provides, supplies or administers to any pregnant woman, or procures any such woman to take, any medicine, drug or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than ten years."

This statute was adopted by this state in 1876, and has been carried forward in every compilation and revision of our Code without amendment or modification, except that the words "state prison" have been substituted for the word "penitentiary." It is substantially declaratory of the common law in respect to abortion.

R. S. Utah 1933, 103-2-2, provides:

"Every woman who solicits any person, any medicine, drug or substance whatever, and takes the same, or who submits to any operation or to the use of any means whatever, with intent thereby to produce a miscarriage, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than one nor more than five years."

This was first enacted and adopted by this state in the Revised Statutes of 1898, and creates a separate, distinct, and wholly statutory offense. Before the enactment of this statute, the woman's acts and conduct condemned by the statute were not regarded as criminal, and she was not subject to prosecution, although her moral delinquency was recognized by the courts in their instructions to juries. Ob-

viously each of the two statutes above quoted defines a separate and distinct offense. It is quite clear that the woman spoken of in the statute is not regarded as one of the persons who could be guilty of the crime described in R. S. 1933, 103-2-1, supra, and that she could not be prosecuted therefor either as principal or as an accomplice. Says the court in *People* v. *Vedder,* 98 N. Y. 630:

"We regard the proposition as too well settled by authority, and too salutary in practice to be now questioned."

The true test of an accomplice is stated in 16 C. J. 673, § 1315, as follows:

"One who could not be convicted of the crime with which the defendant is charged is not an accomplice no matter how culpable his conduct in connection therewith may be."

In this state we have no statutory definition of an accomplice, but R. S. 1933, 103-1-43, thus defines principles:

"All persons concerned in the commission of a crime, either felony or misdemeanor, whether they directly commit the act constituting the offense or aid and abet in its commission or, not being present, have advised and encouraged its commission. * * *"

In *State* v. *Hilberg,* 22 Utah 27, at page 39, 61 P. 215, 218, this court lays down the test for accomplices as follows:

"Could she have been indicted for the offense charged, either as a principal or accessory,"

and in all of the authorities cited substantially similar definitions are applied. In *Stone* v. *State,* 118 Ga. 705, 45 S. E. 630, 632, 98 Am. St. Rep. 145, it is said that one is only an accomplice

"when it is shown that he could have been tried as principal or accessory in the offense under investigation."

In *State* v. *Jones,* 115 Iowa 113, 88 N. W. 196, 198, citing *Bass* v. *State,* 37 Ala. 469; *Commonwealth* v. *Wood,* 77 Mass. (11 Gray) 93, *Dunn* v. *People,* 29 N. Y. 523, 86 Am. Dec. 319, the test is laid down,

"Could he be indicted for the same offense for which the defendant was being tried?"

In *State* v. *McCurtain*, 52 Utah 63, at page 67, 172 P. 481, 482, this court had before it this identical question, and there said:

"It is further contended that the prosecutrix is an accomplice and that the court should have so charged the jury. The contention is not tenable. It has often been held that the person on whom the criminal operation is performed although at her request or with her consent, is, nevertheless, not an accomplice. Such is the holding in the following cases.: *People* v. *Vedder*, 98 N. Y. 630; *Dunn* v. *People*, 29 N. Y. 523, 86 Am. Dec. 319; *Watson* v. *State*, 9 Tex. App. 237; *Commonwealth* v. *Wood*, 11 Gray (Mass.) 85; *Commonwealth* v. *Follansbee*, 155 Mass. 274, 29 N. E. 471; 1 R. C. L., § 4, p. 71. While, no doubt, the female who requests or consents to a criminal operation with a view of producing an abortion is morally in fault, yet she is not guilty of the offense, and cannot be prosecuted under the statute. She therefore is not an accomplice."

In *State* v. *Carey*, 76 Conn. 342, 56 A. 632, 635, the defendant was jointly charged with one Beebe on information for having performed a criminal operation on one Ida May Lafferty for the purpose of procuring an abortion. Beebe and Lafferty were witnesses for the state against the defendant. Defendant asked the court to instruct the jury that the woman, Ida May Lafferty, was an accomplice. The trial court charged the jury that she was not to be regarded as an accomplice. In passing on the question, the court said:

"The court did not err in saying that the witness Lafferty was not, strictly speaking, an accomplice of the accused in the perpetration of the crime charged against him. She could not be prosecuted and punished for that crime. There is nothing in the record that justifies the affirmation that she testified under the inducement of any promise, express or implied, of immunity from prosecution for the distinct crime she had committed. She is far from coming strictly within the meaning of 'accomplice' as used by Hale, Hawkins, Buller, Mansfield, and all the earlier judges in referring to the witness whose participation in the crime charged almost of necessity involved that turpitude and interest which destroyed his credibility. The theory of the defense is that the crime of the accused involved an operation on the body of

156

the witness; that this operation could be more conveniently performed with her assent; that in giving assent she assisted him in the operation, and was therefore a joint perpetrator with him of the crime. The conclusion does not follow. Ordinarily, a man may injure his own body by his own hand or the hand of an agent, without himself violating the criminal law. And the person who injures his body with such assent may commit a crime of which the injured party is not guilty. A murderer cannot justify himself by proving the assent of his victim. Noninterference with a man's control of his person is not extended to the disposition of his life; but taking his own life is a thing distinct from the crime of murder. If a man in a moment of weakness should assent to the opening of a vein by another for the purpose of taking his life, and, when in the immediate expectation of death, make a statement of the facts attending the assault, it would hardly be claimed, upon trial of his assailant for felonious killing, that the dying declaration must be received with all the infirmities attending the testimony of an accomplice in the crime. This distinction between a man's injuring his own body himself, or through assent to such injury from another, and the crime that may be committed by another in inflicting such injury, has been strongly drawn in crimes akin to the one under discussion. At common law an operation on the body of a woman quick with child, with intent thereby to cause her miscarriage, was an indictable offense, but it was not an offense in her to so treat her own body, or to assent to such treatment from another; and the aid she might give to the offender in the physical performance of the operation did not make her an accomplice in his crime. The practical assistance she might thus give to the perpetrator did not involve her in the perpetration of his crime. It was in truth a crime which, in the nature of things, she could not commit. And so it has been held, under various statutory forms of this offense, that the victim of an attempted abortion could not be an accomplice in a crime which consisted in an operation on her body, with or without her consent, by another person, with intent to produce abortion. *Commonwealth* v. *Wood*, 11 Gray [Mass.] 85, 93; *Commonwealth* v. *Boyton*, 116 Mass. 343, 345; *Commonwealth* v. *Follansbee*, 155 Mass. 274, 277, 29 N. E. 471; *State* v. *Hyer*, 39 N. J. Law, 598."

The court continues:

"He [the defendant] is equally guilty whether the woman assent or does not assent to this use of her person, and any assistance he may have in performing the physical operation through her assent is not, in the meaning of the law, assistance from her in the perpetration of his crime, and does not make her an accomplice in that crime.

This view is strengthened, rather than weakened, by the fact that the Legislature at the same time, for the purpose of further promoting the public policy which regards all unnecessary miscarriage as a public evil, created two new and distinct offenses, now contained in sections 1156 and 1157 of the General Statutes of 1902, one limiting the power of a woman over her own person, and punishing an attempt to produce unnecessary miscarriage, whether through the use of her own hands or those of an agent, and the other punishing every person who, by publication or otherwise, encourages the commission of either of the above-mentioned crimes. The offense created in thus limiting the power of a woman to injure her own person is in form, purpose, and punishment clearly distinct from that crime committed by another who inflicts an injury on her person in violation of law. The public policy which underlies this legislation is based largely on protection due to the woman—protection against her own weakness as well as the criminal lust and greed of others. *The criminal intent and moral turpitude involved in the violation by a woman of the restraint put upon her control over her own person is widely different from that which attends the man who, in clear violation of law, and for pay or gain of any kind, inflicts an injury on the body of a woman endangering health and perhaps life.*" (Italics added.)

The Supreme Court of Minnesota states the reason for the rule thus:

"As a first impression, it may seem to be an unsound rule that one who solicits the commission of an offense, and willingly submits to its being committed upon her own person, should not be deemed an accomplice, while those whom she has thus solicited should be deemed principal criminals in the transaction. But in cases of this kind the public welfare demands the application of this rule, and its exception from the general rule seems to be justified by the wisdom of experience." *State* v. *Pearce*, 56 Minn. 226, 57 N. W. 652, 1065.

Various other states having almost identical statutes with Utah as to abortions, the punishment therefor, and corroborations of accomplices and defining who are principals, have sustained the proposition that a woman upon whom an abortion has been committed, even with her consent, is not an accomplice in the legal sense, whatever may be her moral turpitude. *State* v. *Shaft*, 166 N. C. 407, 81 S. E. 932, Ann. Cas. 1916C, 627; *Gullatt* v. *State*, 14 Ga. App. 53, 80 S. E. 340; *State* v. *Stafford*, 145 Iowa 285, 123 N. W. 167;

*Meno* v. *State,* 117 Md. 435, 83 A. 759; *Shaw* v. *State,* 73
Tex Cr. R. 337, 165 S. W. 930; *Fondren* v. *State,* 74 Tex.
Cr. R. 552, 169 S. W. 411; *Gray* v. *State,* 77 Tex. Cr. R. 221,
178 S. W. 337; *Regina* v. *Cramp,* 14 Cox C. C. 390; *State* v.
*Smith,* 99 Iowa 26, 68 N. W. 428, 61 Am. St. Rep. 219;
*Peoples* v. *Com.,* 87 Ky. 487, 9 S. W. 509, 810; *Comm.* v.
*Wood,* 11 Gray (Mass.) 85; *Comm.* v. *Boyton,* 116 Mass.
343; *Comm.* v. *Follansbee,* 155 Mass. 274, 29 N. E. 471;
*State* v. *Owens,* 22 Minn. 238; *State* v. *Hyer,* 39 N. J. Law,
598; *Dunn* v. *People,* 29 N. Y. 523, 86 Am. Dec. 319; *People*
v. *Vedder,* supra; *People* v. *McGonegal,* 136 N. Y. 62, 32 N.
E. 616; *Comm.* v. *Bell,* 4 Pa. Super. 187; *Smartt* v. *State,*
112 Tenn. 539, 80 S. W. 586.

We feel that the decision in *State* v. *McCurtain,* supra,
correctly stated the law, and that the principle of law there
announced should not be departed from.

Inasmuch as the testimony of prosecutrix must be corro-
borated, the question of the character and extent of the cor-
roboration becomes important. R. S. 1933, 105-32-14, supra,
and R. S. 1933, 105-32-18, the latter section relating to cor-
roboration of the testimony of an accomplice, were first
enacted by the Legislature of this state in 1878 in its adop-
tion of a code of criminal procedure. It would seem reason-
able that the term "corroboration" as employed in both such
sections should be given the same significance. R. S. 1933,
105-32-18 has been construed and applied a great many
times by this court. *State* v. *Laris,* 78 Utah 183, 2 P. (2d)
243; *State* v. *Cox,* 74 Utah 149, 277 P. 972; *State* v. *Butter-
field,* 70 Utah 529, 261 P. 804; *State* v. *Lay,* 38 Utah 143,
110 P. 986; *State* v. *Spencer,* 15 Utah 149, 49 P. 302. It has
been uniformly held that the test of the sufficiency of the
corroborating evidence is that it need not be sufficient in
itself to sustain a conviction, but it must in and of itself tend
to implicate and connect the accused with the commission
of the crime charged, and not be consistent with his inno-
cence. We are of the opinion that the court in applying R. S.

1933, 105-32-14, supra, should be controlled by the same rule.

In the present case, we find no such equivalent in the charge of the court nor did the defendant make such request. True, defendant in his request No. 33 as shown in the bill of exceptions included therein what might be deemed sufficient, but which was proposed along with other propositions which in the writer's opinion were objectionable and were very properly refused. Hence we have the rule that no error is committed in refusing a request for an instruction which is good in part and bad in part. Furthermore, in respect of "Request No. 33," the court's refusal to give the request was duly excepted to as shown in the transcript, yet the requested instruction appears nowhere in the defendant's abstract; and, in the assignments of error, the specification of error in reference thereto is as follows:

"XXXI. The court erred in refusing to give defendant's request No. 33 to which defendant excepted. (Tr. 85).

"Requested Instruction No. 33.

"The testimony of an accomplice should be weighed with great caution, and the jury may disbelieve such testimony altogether if they believe it to be untrue, the jury being the sole judges of credibility of the witnesses."

Being so assigned and being found nowhere in the abstract, and we are driven to search the bill of exceptions to find it, the writer, again expressing his personal views, says that the request is not before us for any purpose.

III. Defendant requested an instruction that the mother of the prosecutrix was an accomplice. The trial court properly refused this request.

IV. Serious consideration must be given the fourth question: Did the trial court err in admitting evidence to the effect that the defendant had committed an abortion on another woman prior to the offense for which he was being tried? This evidence was offered by the state for the purpose of showing the intent of the defendant in committing the act charged. Authorities on this question are by no

means uniform. Some authorities hold that such evidence is relevant and competent for the purpose of showing intent, regardless of what the defense may be. Other authorities hold that such evidence is relevant and material only when the act done is claimed to be innocently or accidentally done, or by mistake, or when the result is claimed to have followed an act lawfully done for a legitimate purpose, or when there is room for such an inference. Then in rebuttal of such claim, and for the purpose of showing intent, other abortions attempted or performed may be shown. Other authorities admit evidence of other abortions attempted or performed on the same woman upon whom the offense is alleged to have been committed.

We will concern ourselves with the first and second propositions only. In *Clark* v. *People,* 224 Ill. 554, 79 N. E. 941, five or six women testified that for several years preceding the time of the charged offense the plaintiff in error solicited patronage and held herself out as being able and willing to commit abortion or produce miscarriage by means of instruments and medicines. This evidence, of course, was in the nature of admissions, and the court held it was competent to show the declarations of one on trial for procuring abortion to the effect that she was in the habit of performing, or had solicited, such work.

In *People* v. *Hagenow,* 236, Ill. 514, 86 N. E. 370, evidence of other abortions was held admissible. In *People* v. *Schultz-Knighten,* 277 Ill. 238, 115 N. E. 140, the evidence of other abortions was admitted for the purpose of showing guilty knowledge. In *People* v. *Hobbs,* 297 Ill. 399, 130 N. E. 779, at page 783, the court says:

"* * * The specific intent or purpose to produce a criminal abortion must be proved before the guilt of the accused is established, and proof of performance of former similar criminal abortions on the same or another woman is admissible, under the authorities, to prove such specific intent. A defendant could not render this testimony incompetent by interposing a particular defense to the charge. *People* v. *Hagenow,* supra. In its case in chief the state must prove all of the elements of the crime, including the intent, and need not wait to

learn the character of the defense that is to be made by the defendant. The plea of not guilty puts in issue all material allegations and any proper defense may be shown thereunder. * * * So it is not the law, as claimed and insisted by the plaintiff in error, that in order for such proof to be admissible it must further appear that the defendant admits the commission of the act but alleges that such act was necessary for the preservation of the life of the patient. Courts of other states hold to the same effect, and such proof is not confined to former convictions for abortion but may be made by parol evidence and where the defendant was never tried for such former offenses."

In *State* v. *Newell,* 134 Minn. 384, 159 N. W. 829, the court admitted evidence of other abortions by the accused for the purpose of showing a guilty or criminal intent in doing the act charged. In *State* v. *Rowley,* 197 Iowa 977, 195 N. W. 881, page 882, the court says:

"Over the objection of appellant the court admitted in evidence testimony tending to show that appellant had committed abortions upon other women than the one named in the indictment. Unquestionably, the general rule is that, upon the trial of a criminal case, evidence of the commission of other similar crimes by the defendant is inadmissible. The rule has been declared so frequently that citation of authorities is unnecessary to support it. There are, however, exceptions to this rule, and particularly so where a question of intent is involved. The statute under which appellant was indicted provides that the act must be done 'with intent' to produce the miscarriage of any woman. It also provides that the act is not criminal in the event such miscarriage shall be necessary to save the life of the person upon whom the operation is performed.

"In this case the appellant denied that she performed any operation whatever, and it is therefore urged that evidence of other similar crimes for the purpose of showing intent was inadmissible. The state, however, was compelled to establish, as part of its main case, not only the fact of the use of the instruments, but that they were used with the specific intent charged, and that it was not necessary so to do in order to save life. Notwithstanding the appellant's denial of evidence of having in any manner performed the act charged, the burden rested upon the state, not only to prove that the appellant used an instrument as charged, but that it was done with the intent to procure a miscarriage, and that such intent was an unlawful one, because of the fact that the operation was unnecessary to save life. The fact that appellant may have performed other similar acts closely connected in time with the act in question, and that such acts were performed

with, the intent to produce miscarriage, and that the same was not necessary to save life, would have a legitimate bearing upon the question of the intent of appellant in the instant case, if the jury believed the evidence of the state to the effect that the act was in fact performed."

We will now call attention to the leading authorities which hold that evidence of other distinct offenses is competent and relevant only when the act is admitted and justification for the act is claimed. In *People* v. *Lonsdale*, 122 Mich. 388, 81 N. W. 277, 278, the court distinguishes *People* v. *Seaman*, 107 Mich. 348, 65 N. W. 203, 61 Am. St. Rep. 326, and says:

"The prosecution introduced the testimony of a witness to show that she had applied to the respondent to have an abortion produced upon her. The testimony was very weak, and was evidently that of an unwilling witness. However, there was sufficient in it to show the purpose of the woman's visit, and that some acts were done towards the accomplishment of that purpose. The attorneys for the people justify this testimony on the ground that it tended to prove guilty knowledge or intent, and rely upon *People* v. *Seaman*, 107 Mich. 348, 65 N. W. 203 [61 Am. St. Rep. 326]. This case is not within the rule there announced, or within the authorities there cited. This case does not form an exception to the general rule of evidence. Where the intent or guilty knowledge is a necessary conclusion from the act done, proof of other offenses of a similar character is inadmissible, and violates the rule that the evidence must be confined to the issue. Upon the record, there is no room for an inference that death resulted from accident, or that the operation was performed to save the life or health of the deceased. On the contrary, if the jury found that the dying declaration of the deceased was true, the crime was complete, and the jury could not find otherwise than that it was done with guilty knowledge and intent. This testimony should have been excluded, and for this reason and conviction must be set aside."

In *People* v. *Hodge*, 141 Mich. 312, 104 N. W. 599, 113 Am. St. Rep. 525, the court says:

"It was the claim of the defendant that the operation, which he did not deny, was a necessary one, or, if not, that he believed it to be, and that he performed it without criminal intent. To show a criminal intent one May Lane was called by the prosecution, who testified that defendant performed a similar operation upon her for the avowed purpose of producing an abortion. It is said by counsel that this testi-

mony was inadmissible, under the case of *People* v. *Lonsdale*, 122 Mich. 392, 81 N. W. 277. The cases differ widely. In that case the criminal intent was a necessary conclusion from the act proved. Here it was not, as we have already seen. It depended on the truth or falsity of defendant's defense that the act was done for a legitimate purpose. See *People* v. *Seaman*, 107 Mich. 348, 65 N. W. 203, 61 Am. St. Rep. 326."

In *People* v. *Hickok*, 56 Cal. App. 13, 204 P. 555, page 557, the court says:

"As a rule, upon the trial for a particular crime evidence which tends to show the commission of another and distinct offense by the defendant is inadmissible. To this rule there are, however, several exceptions. According to one line of authorities the state would have the right to introduce such testimony as a part of its case in chief in order to negative the possibility that the operation was necessitated by the condition of health of the patient. *People* v. *Hagenow*, 236 Ill. 514, 86 N. E. 370; *People* v. *Northcott*, 45 Cal. App. 706, 189 P. 704; *People* v. *Sindici*, 54 Cal. App. 193, 201 P. 975. In two California cases the Supreme Court, in denying petitions for their transfer to that court, withheld its approval of this doctrine; the exigencies of those cases not requiring its application. However, it is settled that such evidence is admissible whenever it appears that the defendant claims that the operation was innocently performed and for a lawful purpose. *People* v. *King*, 23 Cal. App. 259, 137 P. 1076."

In *State* v. *Brown*, 3 Boyce (Del.) 499 85 A. 797 the court held, where criminal intent need not be specifically proved or is necessarily established by proof of the commission of the act, evidence of the perpetration or attempted perpetration of similar offenses is inadmissible.

In *Clark* v. *Commonwealth*, 111 Ky. 443, 63 S. W. 740, at page 745, in passing upon the question whether evidence of other abortions than the one for which the defendant is being tried may be shown as evidence of the intent, the court says:

"It has been held, and such seems to be the settled law, that a physician may commit abortion upon a woman, when, in his opinion, it is necessary to do so to save her life; or another may commit the abortion under the advice of a physician that it is so necessary. And it has been held in some instances, in prosecutions for criminal abor-

tions, that it is incumbent upon the commonwealth to show as a part of its case that the abortion was not necessary in order to save the life of the mother. It seems that this court has not recognized the rule last mentioned. *People* v. *Commonwealth*, 87 Ky. 489, 9 S. W. 509, 810. If it was shown or admitted that the defendant had committed the abortion, but attempted to justify it upon the ground of necessity, it is clear that the evidence indicated above would have been competent to prove his motive and intent, and to rebut or negative the idea that he was acting upon his professional judgment, and under a necessity of saving the life of the mother. In the case at bar the purpose and effect of the evidence was not so much to show intent or motive, as it was to establish primarily the guilt of the accused as to having perpetrated the act of abortion. In the opinion of the majority of the court, the admission of this evidence was error, and it should have been rejected. We are of the further opinion, however, that it would have been competent, as above suggested, as affecting intent or motive, provided there had been proof or admission that defendant had committed the act resulting in the abortion, and undertook to justify that act under the plea of necessity."

"Acts of defendant tending to show his knowledge of the woman's pregnancy and his intention to commit an abortion upon her may be proved whether they were prior or subsequent to the particular act charged in the indictment; hence evidence of other operations performed by defendant before or after the operation charged is admissible for the purpose of showing the intent with which the act charged was done. But such evidence is competent only on the question of intent, and therefore is not admissible where the unlawful intent has been proved and the only question is whether defendant was connected with the crime, or where the question of intent is not involved." 1 C. J. p. 329, § 96.

## In 1 R. C. L. p. 78, § 14, the rule is laid down as follows:

"Where the accused admits the performance of the operation but claims that it was a necessary one, or that he so believed, and that he performed it without criminal intent, it has been held that evidence that he had performed other criminal operations is admissible."

"Evidence of similar operations performed by defendant upon others is admissible, where defendant claims operation in question was innocently performed and for a lawful purpose." See 1 Nichols, Applied Evidence, § 19, p. 276.

In *People* v. *Seaman*, 107 Mich. 348, 65 N. W. 203, 61 Am. St. Rep. 326, evidence of other abortions committed by the

defendant was admitted. The court, in a well-considered opinion, says at page 206 of 65 N. W., 107 Mich. 348:

"Upon principle and authority, it is clear that where a felonious intent is an essential ingredient of the crime charged, and the act done is claimed to have been innocently or accidentally done, or by mistake, or when the result is claimed to have followed an act lawfully done for a legitimate purpose, or where there is room for such an inference, it is proper to characterize the act by proof of other like acts producing the same result as tending to show guilty knowledge, and the intent or purpose with which the particular act was done, and to rebut the presumption that might otherwise obtain."

The defendant would be guilty if he procured, or attempted to procure, a miscarriage upon the prosecutrix, unless the same was necessary to preserve her life. The state, under the plea of not guilty which the defendant entered was compelled to prove as part of its case, that the defendant in procuring the miscarriage was not doing so in an effort to save the life of the prosecutrix. In order to make that proof, the prosecutrix testified that her health was good at the time she went to the defendant's office. She detailed the purpose of her visit and the agreement she made with the defendant for the services that he was to render. Other physicians were called who also testified as to the condition of the prosecutrix at the time she was making the visits to the defendant's office. The criminal intent necessarily followed from the performance of the act.

No claim or intimation was made by the defendant that he had performed the operation or that it was necessary to save the life of the prosecutrix. Had he done so, then evidence of the commission, or attempted commission, of other abortions, would have been relevant and material. This court in *State* v. *McCurtain*, 52 Utah 63, 172 P. 481, held that evidence of other abortions was relevant and material when the defendant admitted the act but claimed that it was performed for the purpose of saving the life of the woman. We approve the rule laid down in that case. That case, however, is not in point with the proposition here involved. In the

case at bar, no such claim was made. Had it been, then the McCurtain Case would have been controlling.

Where the state is able to prove, as it did in the case at bar, the commission of the act and that its performance was not necessary to save the life of the woman, then the criminal intent of the defendant has been shown, and evidence of other abortions on other and entirely different women is not relevant nor competent. If the defendant, although he had pleaded not guilty, claimed that the act was necessarily performed in an effort to save the life of the woman, then in *rebuttal* of such claim the state might well offer evidence of other abortions attempted or committed by the defendant for the purpose of disproving such claim and showing his intent in the performance of the acts for which he is being tried.

Cases may arise where the state would be unable to prove the intent of the defendant without proving the commission, or attempted commission, by him on other women of separate and distinct offenses. Should such a case arise, then, for the purpose of proving a criminal intent, the state should be permitted to introduce such evidence on its main case, although a plea of not guilty had been entered by the defendant; but, where the state, as was the case here, can prove the intent without relying upon separate and distinct offenses committed by the defendant, it should do so.

Evidence of the commission of separate and distinct offenses is an exception to the general rule, and its admission should be definitely limited to the cases in which it is relevant and material in order to safeguard the rights of a defendant. Jurors might often be inclined to convict a defendant, although he be innocent of the crime charged, were the state permitted to prove that he had committed other and distinct crimes than the one for which he was being tried. In limiting such evidence, as we have, we feel that we are protecting and safeguarding, not only the rights of the defendant, but the state as well.

It necessarily follows that the admission of this evidence was error, and that a new trial should be granted. The judgment of the court below is therefore reversed, and the case remanded for a new trial.

STRAUP, Chief Justice (concurring).

I concur in the reversal of the judgment. I do so chiefly on the ground (1) of the inadmissibility of the evidence as to the commission by the accused of an offense similar to, but separate and distinct from, that charged in the information, evidence of an abortion claimed to have been committed or attempted to have been committed by him on another woman eleven months or more prior to the commission of the alleged offense; (2) error of the court in refusing to charge the jury that the woman on whom the alleged offense was committed was an accomplice and in charging that she was not an accomplice; and (3) error in charging the jury the purpose for which the provisions of R. S. 1933, 103-2-2 and 105-32-14 (presently to be noted), could be considered by the jury, and directing them such provisions could be considered only as bearing on or affecting her credibility.

In approaching a consideration of the first ground, I recognize a conflict in the cases on the subject. Some, I think the best-reasoned, cases, deny the admissibility of such evidence. Other courts, in some instances, admit it on the theory to show intent, motive, or guilty knowledge; still others to dispel an inference or presumption of mistake or accident in procuring the miscarriage or a necessity therefor to preserve the life of the woman. It is not my purpose to cite the cases with respect to the divers holdings and then "count noses." They are accessible as cited in texts and by annotations on the subject. I rather approach the question from a consideration of what I regard recognized and established principles of law on the subject, and an adherence to the texts and cases in harmony with such principles, rather than those unmindful of them, or reaching conclusions on mere expediency.

The statute (R. S. 1933, 103-2-1), provides that:

"Ever person who provides, supplies or administers to any pregnant woman, or procures any such woman to take, any medicine, drug or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life is punishable by imprisonment in the state prison not less than two nor more than ten years."

Thereunder, the state to convict is required to allege and prove, not only that the accused by means of drugs or medicine or instruments produced, or attempted to produce, a miscarriage, but also that such miscarriage was not necessary to preserve the life of the woman on whom the miscarriage was produced. That was decided in the case of *State* v. *Wells,* 35 Utah 400, 100 P. 681, 136 Am. St. Rep. 1059, 19 Ann. Cas. 631. Such holding but followed the well-established rule that, when a negative is an essential element of an offense as defined by the statue, the state is required to allege and prove the negative. In other words, the statute does not declare every procurement of a miscarriage to be an offense, but is so only when done not to preserve the life of the woman on whom it is committed; and that the absence of such necessity is so far descriptive of the offense that it cannot be established without proof that the necessity did not exist. And so the authorities generally teach where, under a statute, as here, a negation is an essential element to constitute the offense. Hence proof that a physician in his professional treatment of a woman pregnant with child used means to destroy the fetus is not evidence that the miscarriage was not necessary to preserve the life of the woman. *State* v. *Clements,* 15 Or. 237, 14 P. 410. To that effect is the Wells Case. It, however, is no authority that for such purpose evidence of a separate and similar offense or offenses may be adduced.

It is a well-established rule, recognized substantially by all courts, that evidence of a separate and similar offense is not admissible against the accused on trial for another spe-

cific offense; that, when the accused is put on trial for one offense, he is to be convicted, if at all, by evidence which shows him guilty of that offense alone, and proof of guilt of one or more similar offenses unconnected with that for which he is on trial must be excluded, unless the proof comes within one or more of the exceptions to the general rule. Such exceptions, and as stated in the case of *State* v. *Bowen*, 43 Utah 111, 134 P. 623, chiefly are: When it is material and proper to show motive or a scheme or plan for the commission of the alleged offense; where criminal intent or guilty knowledge of the wrongful or unlawful act or acts is material, especially as illustrated in cases of passing or uttering forged instruments, counterfeit coin or money, receiving stolen property, and in other cases where scienter or guilty knowledge is a material subject of inquiry; where the alleged offense and another claimed similar offense constitute parts of one transaction or parts of a general scheme or plan so related and connected that a complete account of the entire transaction of the one may not be given without also showing the other, or where proving the one involves proving the other; in adultery, prior acts or familiarity between the parties to show an adulterous disposition between them; in a charge of rape or attempted rape, previous attempts of the accused on the same female, but not on another female; in a charge of arson, that the accused made other attempts to set fire to the buildings in question, but not attempts to set fire to other buildings not connected with, nor a part of, the same transaction of the alleged offense. Jones on Evidence (2d Ed.) § 143; notes to *People* v. *Molineux*, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193.

Courts generally adhere to the rule that, to admit proof of the commission by the accused of an offense other than of the charged offense, the proof must come within one or more of the exceptions to the general rule excluding such evidence. What chiefly divides the courts on the subject is the question of whether the offered proof falls within or without such exceptions. The exceptions, like all exceptions

to a general rule, in their application are restricted and limited and not to be enlarged. As stated by the Oregon court in the case of *State* v. *Willson*, 113 Or. 450, 230 P. 810, 39 A. L. R. 84 (rehearing denied Id., 113 Or. 450, 233 P. 259, 39 A. L. R. 84), the general rule that the commission of a separate crime cannot be proved in support of the one named in the indictment or information is still in existence, and that exceptions to the rule have not as yet superseded the time-honored precept of the law, and hence the exceptions are to be carefully limited and guarded and their number not increased.

To determine the admissibility of the complained of evidence as to the commission by the accused of an offense other than, and similar to, that charged in the information and as to whether such proof is within or without the exceptions to the general rule, necessitates a consideration of the evidence adduced in respect of the charged offense as well as that admitted as to such other offense.

The woman on whom the charged offense was committed in substance testified that she was a married woman, that she prior to the operation had given birth to two children, so far as made to appear, without any unusual conditions or complications, one child about two and a half years of age and the other about thirteen months, and that about the last of January, 1930, she discovered she was again pregnant. Until a month or more before then she had her usual monthly periods of menstruation, and that on discovering her pregnant condition she visited the accused, a regularly licensed physician, and told him that she was pregnant for about a month or a month and a half. He examined her and found that she was in such condition. She asked him if he could give her medicine to relieve her of her pregnancy. He told her medicine would not do any good, that he could perform an operation, and she would be all right, but that "it would come high." She told him she would think it over. She returned to his office a few days thereafter, February 4th, and told him she "had made up her mind" to have the

operation performed, and "that she had the money to pay him." She testified that at that time "my health was all right; I was healthy in every way," except being pregnant. On that visit the accused placed her on the operating table and "performed the operation" by inserting an instrument in "my female organs, I felt a pain"; that he packed the uterus and told her to return the next day, when he would clean her out and she would be all right. She returned the next day; he asked her if she had started to menstruate; she told him she had not. He said she would in a few days. He again placed her on the table and used instruments on her as he had before, stating that he was cleaning her out so that there would not be any blood poisoning and told her not to worry. She paid him $15 on the first occasion and $10 on the second. She returned to his office on the 12th of February and told him she was not feeling very well, and that she had not started to menstruate. He then made a further examination of her and said there was a blood clot in the womb and cleaned it out. She returned the next day, when he told her he would put something in to hold the womb open.

Up to that time she alone had visted the accused. On the 15th she and her mother visited him at his office. He then made a further examination of the prosecutrix, told her her condition was caused by a tipping of the uterus, that she would be all right, and asked them to come back in a day or two. They did so, the prosecutrix then having chills and fever, and told the accused she was feeling worse. He told her she had just taken cold, and advised her to go home and drink hot lemonade. When she and her mother left the office of the accused, they went directly to the office of the family physician, who placed her on a table, and "with his fingers reached up in the region of my womb and proceeded to manipulate my body"; that she did not know whether he used any instrument or not, but shortly thereafter she started to flow, just blood, but no blood clots.

The mother testified she knew her daughter was pregnant

and that the daughter on the 4th of February had been at the accused's office but had not consulted her about going to his office or to have an operation performed, that she told her an operation had been performed, and that the first time she accompanied her daughter to the accused's office was on the 15th, "after the operation had been performed." On that occasion she told the accused her daughter was not getting along all right, to which he replied, "I took out everything that should come out and used a serum so that there would be no danger of an infection," and told her to take her daughter home and give her hot lemonade; that the accused made an examination of the daughter, put her on the table, and used an instrument of some kind, and put something in to hold the uterus open and told them to come back on the 17th, when he would take out what he had put in; that they returned on that day, the accused again examined the daughter, but took nothing out, just "fussed around," and told them to come back in a day or two. When they left the office, the daughter having chills and fever, they went to the office of the family physician. The mother further testified that when on the 15th she went to the accused's office, she knew that he had performed an operation on her daughter; but there is nothing appearing in her testimony, or otherwise, that the mother in any way aided or consented to the operation or advised or encouraged it.

The family physician testified that he, at the request of the daughter, examined her, as he thought about February 10th, and from the history given him as to her menstrual periods and from his examination testified that in his opinion the daughter was pregnant on February 4th, and when he first examined her she was not "in such physical condition that it was necessary to remove the fetus to preserve her life." He further testified he again examined her on the 17th, and then found her in a septic condition and evidence of an infected uterus with pelvic peritonitis, an infection introduced into the uterus by forceful manipulation and an attempted removal of the fetal contents of the uterus;

that the mouth of the womb was wide open and the mouth and neck greatly dilated and stretched with a powerful dilator; that he immediately sent her to the hospital, where she remained for a week or more, and when she left the hospital she was not pregnant. Testimony, of another witness, a sister of the prosecutrix, was given as to an admission of the accused that he had operated on the prosecutrix.

The testimony of another woman, admitted over the objection of the accused, as to an operation performed on her eleven months or more prior to the commission of the charged offense, in substance was that "sometime in March, 1929," she, then unmarried, but later married the father of the child, believing she was pregnant, consulted the accused at his office, and on an examination by him he found such was the case. She testified that her health at that time was good, except that she was pregnant and had leucorrhoeal discharges, and that she wanted to be relieved from her pregnant condition; that the accused suggested an operation by the use of instruments, but she "would not let him do that," and so he prescribed medicine instead, which she took; that the child was born alive the following October, she thought it was an eight months' child, somewhere between seven and nine months, but in a normal condition, and at its birth was taken by a sister of her then husband, the father of the child; that between the time she first consulted the accused and until the birth of the child she visited him at his office on an average once a week and took treatments and medicine prescribed by him; that a day or two before the child was born she and her mother visited the accused at his office; that the mother remained in an outer room; that the accused took the witness in a private room, where he administered an anesthetic to her; that she did not know what he did, but when she came from under the influence of the anesthetic she fould herself on a couch with her feet propped up and that she felt "somewhat dizzy, silly, and was laughing"; that the accused put a pack on her, and then she and her mother drove home; shortly thereafter she

felt water coming from her, which continued during the night, and the next day the child was born. She was asked if she desired to convey the idea that the accused during all the time from March until the birth of the child was attempting to commit an abortion, to which she answered, "He didn't tell me what he was doing, but that is the way it looked to me." The defendant rested his case without evidence when the state rested.

I have thus in some detail characterized the two offenses to show that they were entirely separate and distinct transactions and that the one in no particular was influenced by the other. It is urged that evidence of such claimed prior offense was admissible to show motive, or intent, or guilty knowledge of the accused as to the charged offense. Because in some cases evidence of a separate and similar offense is admissible to show motive or scienter, or intent, the fallacious conclusion is deduced that such evidence is admissible *in all cases where a felonious intent is an essential element of the charged offense.* Of course, a felonious intent, a criminal or evil purpose, is an essential element in the commission of most felonies. But that does not mean that evidence of a prior, separate, and similar offense may be given in all cases to show with what intent the specific charged offense was committed. To contend that is to enlarge or increase or to disregard the exceptions to the general rule excluding such evidence. A felonious intent is an essential element of grand larceny. Yet one would hardly contend that, to show that the taking by the accused of the subject of the charged larceny was with a felonious intent, with a criminal or evil purpose, proof was admissible that he, at a different time and place and in a transaction unrelated to and not connected with the charged offense or with the circumstances thereof, committed a similar offense by taking, driving, or carrying away similar property of another, even though the accused claimed that the taking of the subject of the charged larceny was with an honest belief that he had a right to take it. So, too, a felonious intent

is an essential element of murder. Again, it hardly would be contended that, to show the killing of the deceased by the accused was done maliciously or feloniously or without just cause or excuse, proof was admissible that at another time and place he killed and murdered C, where the two transactions were wholly separate and distinct, and the one in no way related to or connected with the other or the circumstances thereof and not parts of a general scheme or plan, even though the accused claimed he slew the deceased in necessary self-defense or that the killing was accidental. Numerous other similar instances might be noted. Thus to hold that evidence of other similar offenses may be adduced in all cases where a felonious intent is an essential element of the charged offense is a misconception of the exceptions to the general rule excluding such evidence.

In connection therewith there is another well-settled rule, and, as stated in 8 R. C. L. 206, that,

"where from the nature of the evidence under inquiry, proof of its commission as charged carries with it the evident implication of a criminal intent, evidence of a perpetration, or attempted perpetration of other like offense will not be admitted."

So, too, in 16 C. J. 589, the author says that:

"Where the question is whether a certain act was intentional or was done by accident or mistake, evidence to show that the accused intentionally committed similar acts is relevant to show the intent. On the other hand, where the nature of the offense is such that proof of its commission as charged carries with it a presumption of criminal intent, evidence of the perpetration or attempted perpetration of other like offenses is inadmissible."

Many cases are cited in support of such texts.

To that effect, too, is our statute, R. S. 1933, 103-1-19, that

"in every crime or public offense there must exist a union or joint operation of act and intent," and by the next section that *"the intent or intention is manifested by the circumstances connected with the offense* and the sound mind and discretion of the accused." (Italics added.)

Here the act itself, thrusting an instrument by the accused into the uterus of a woman known by him to be pregnant and in good physical and healthy condition, and dilating the uterus with a powerful dilator to destroy and expel the fetus, so clearly proclaims the intent with which the act is done as to render proof of another similar offense inadmissible. *People* v. *Lonsdale*, 122 Mich. 388, 81 N. W. 277; *People* v. *Corbin*, 56 N. Y. 363, 15 Am. Rep. 427. The proposition is self-evident. When thus upon the undisputed evidence it was shown that the woman on whom the operation was performed was a married woman in good physical condition and health, that she prior thereto had given birth to two children, that she again became pregnant, of which condition the accused had full knowledge, that she consulted and employed him to commit an abortion upon her, that for such purpose and to destroy the fetus he inserted an instrument in the uterus, dilated the mouth and neck of it, and packed it to keep it open to accelerate the expulsion of the fetus, to say that such acts and operation as so described by the evidence did not carry with them not only an implication but direct proof of criminal intent, it might as well be said in a case where shown an accused with a deadly weapon beat another to death, with no mitigating circumstances appearing, that such proof also did not carry with it an implication or proof of felonious intent. In either such case, the criminal intent is clearly manifested by proof of the circumstances connected with the offense, and hence evidence of a prior similar offense is inadmissible. From the evidence and the undisputed description of the operation as here shown, there is no basis for an inference or presumption that the miscarriage resulting from the operation was accidental, or through mistake, or was not done intentionally, or was produced to preserve the life of the woman on whom the operation was performed. To indulge any such inference or presumption from the undisputed evidence so adduced is to disregard the natural and legal effect of evidence.

For less reason was the evidence admissible to show guilty knowledge. Guilty knowledge of what? Surely not to show that the accused had knowledge that the woman on whom the operation was performed was pregnant; nor to show he had knowledge that thrusting an instrument in the uterus and dilating and packing the mouth and neck of it would destroy and expel the fetus; nor to show *he had knowledge of what he was doing and the consequences thereof* when he committed the charged offense; nor that he had knowledge that it was not necessary to produce the miscarriage to preserve the life of the woman. The case is not one where, as an exception to the general rule, evidence of another similar offense may be given to show scienter or guilty knowledge, as in cases of uttering spurious coin or money or receiving stolen property with knowledge that it was stolen or of other cases where scienter is a material element and a subject of inquiry. Says the author in 16 C. J. 589, that

"where the nature of the crime is such that guilty knowledge must be proved, evidence is admissible to prove that at another time and place, *not too remote*, accused committed or attempted to commit a crime similar to that charged. In other words, *where guilt cannot be predicated on the mere commission of an act*, guilty knowledge may be proved by evidence of complicity in similar offenses; but *where guilty knowledge is presumed from the character of the criminal act, evidence of other crimes should not be received.*" (Italics added.)

Nor is there any basis for the admission of the complained of evidence to show motive. In discussing such exception to the general rule, the author again in 16 C. J. 590, says that

"evidence to show that motive prompting the commission of the crime is relevant and admissible notwithstanding it also shows the commission by accused of another crime of a similar or a dissimilar character. Thus it may be shown that the crime charged was committed for the purpose of concealing another crime, or to prevent accused of being convicted of another crime. However, for evidence of another crime to be admissible to prove motive, *it is necessary that it fairly and directly tends to prove a motive growing out of the collateral crime, evidence of another crime which has no connection with that for which the accused is on trial, and which therefore is not*

*relevant to prove motive, cannot be introduced under the guise of proving motive."* (Italics added.)

Not anything is made to appear either directly or inferentially that the motive which prompted the commission of the alleged offense in any particular grew out of, or was in any way related to or connected with, the commission or attempted commission of the prior offense or that the one in any way was influenced by the other.

The further contention that the evidence was admissible to show that it was not necessary to produce the miscarriage to preserve the life of the woman is, on the undisputed evidence, likewise untenable. Whether the miscarriage was or was not necessary to preserve the life of the woman was dependent upon her state of health and physical condition. Logically, proof of the physical condition or state of health of one woman has no legal relevancy to show the condition of another. Had the state neither by direct nor circumstantial evidence shown the state of health or physical condition of the woman upon whom the operation was performed, and no evidence offered directly or inferentially to show that the miscarriage was not necessary to preserve her life, and no claim made by the accused and no evidence adduced by him tending to show such necessity, it could not well be contended that proof that the accused eleven months or more before produced a miscarriage of another woman not necessary to preserve her life had any legal relevancy to show absence of necessity in the charged offense. Though the state to convict had the burden of proof to show that the alleged miscarriage was not necessary to preserve the life of the woman, yet such fact, as all material facts, was required to be established by relevant testimony either direct or circumstantial as to the physical condition or state of health of the woman on whom the miscarriage was produced (*State* v. *Shuford,* 69 N. C. 486), or as might be gathered from the character and circumstances of the operation itself and the purpose for which as disclosed by the evidence the operation was performed. Because in some cases it may be

difficult—here it was not—to prove absence of such necessity does not justify a resort to incompetent or irrelevant evidence. The absence of such necessity was here clearly established by the testimony of the woman on whom the operation was committed, by the testimony of the family physician, and by the character, circumstances, and purpose of the operation as disclosed by the evidence. As stated in *State* v. *Shuford,* supra, the absence of such necessity was dependent chiefly upon the health and physicial condition of the woman at the time, and that such fact was not affected by evidence of an operation performed on another woman at a different time and place.

No claim is made that the alleged offense and the prior similar offense constituted parts of one transaction, or parts of a general scheme or plan so related or connected that a complete account of the entire transaction of the one could not fairly be given without also proving the other, or that proving the one necessarily involved proving the other; and were such claim made, it on the evidence clearly would not be tenable.

Further, the chief reason why evidence of like offenses is inadmissible is that the introduction of it opens the door to collateral issues not embraced within the information and of which the accused is not apprised and hence unprepared to meet such issues; that to enter upon a trial of them may require as much or more time to try them as to try the charged offense for surely, if the state is permitted to give evidence with respect to the commission of other like offenses, the accused may also give evidence in refutation thereof. One of the requirements and functions of an information is to distinctly and in ordinary and concise language set forth the offense upon which the accused is to be put on trial, and in such manner as to enable a person of common understanding to know what is intended, so as to enable the accused to prepare himself to meet the charged offense, and to limit and restrict evidence with respect thereto.

I come now to the case of *State* v. *McCurtain,* 52 Utah 63, 172 P. 481. There on a charge of a criminal abortion it was held that testimony of a young woman that an abortion was committed on· her by the accused *at or about the time* the operation was performed on the prosecutrix was properly admitted. Such evidence was held proper because of the claim there made by the accused that the miscarriage of the woman operated on in the charged offense was necessary to preserve her life. "Much evidence," said the court, "both for and against the defendants, upon that proposition was adduced," which, as stated, "constituted the chief issue of the case," and hence "the question of intent was therefore the most prominent feature of the case"; and that "it has frequently been held in prosecutions of this character that for the purpose of proving that the operation was in fact criminal, and as showing the intent of the accused, the state may show that other similar operations were performed upon other pregnant women."

In saying that the court followed and quoted from cases holding that a felonious intent is an essential ingredient of the crime charged and *the act done is claimed to have been accidental of by mistake,* it is proper to characterize the act by proof of other like acts producing the same result, as tending to show *guilty knowledge and the intent or purpose* with which the particular act was done and to rebut the presumption that it might otherwise obtain. But in most such cited cases, notably *State* v. *Brown,* 3 Boyce (Del.) 499, 85 A. 797, 800, it, however, is stated that, where "from the nature of the offense under investigation proof of its commission as charged necessarily establishes the criminal intent, or the intent is a necessary conclusion from the act done, evidence of the perpetration, or attempted perpetration, of other like offenses, should not be admitted." 1 C. J. § 96, p. 329, is therealso cited and quoted, that "acts of defendant tending to show his knowledge of the woman's pregnancy and his intention to commit an abortion upon her may be proved whether they were prior or subsequent to the par-

ticular act charged in the indictment; hence evidence of other operations performed by defendant before or after the operation charged is admissible for the purpose of showing the intent with which the act charged was done." But immediately following such language, and in the same section, the author further says that "such evidence is competent only on the question of intent, and therefore is not admissible where the unlawful intent has been proved," etc.

Such is in accord with the recognized principle heretofore referred to that, where the nature of the offense is such that proof of its commission as charged carries with it an implication or presumption of criminal intent, evidence of the perpetraton or attempted perpetration of other like offenses is inadmissible. I recognize that some courts have not always been mindful of such distinction, said nothing about it, and seemingly without any reference thereto announced or stated that, where a felonious intent is an ingredient of the charged offense, evidence may be admitted of the commission by the accused of other similar offenses, which, so broadly stated, generally is conceded may not be done.

Giving the McCurtain Case on the subject full credit, I think the complained of evidence in the case in hand does not fall within it. Here there was no claim of any kind that the accused did not have full knowledge of the pregnant condition of the woman operated on by him, or that the miscarriage was produced accidentally or by mistake, or, unlike the McCurtain Case, any claim whatever that the miscarriage was necessary to preserve the life of the woman, nor on the undisputed evidence was any inference or presumption of any such claim permissible. On the contrary, and as heretofore indisputably shown, the accused did just what he intended to do, willfully, knowingly, and unlawfully to destroy the fetus of a pregnant woman because she did not wish the child and to prevent its birth, without any pretense or claim whatever to preserve the life of the woman.

Whatever justification there was for the admission of the

evidence in the McCurtain Case because of the claim there made and evidence given in support thereof as to a necessity to produce the miscarriage to preserve the life of the woman, no such or any justification for the introduction of the evidence complained of was here shown, unless it be asserted that such kind of evidence is admissible *in all cases* where a felonious intent is an ingredient of the charged offense, which, I am sure, the learned justice who wrote the opinion in the McCurtain Case did not intend.

On the record I am convinced, and I think the record justifies the conclusion, that the complained of evidence, under the guise of showing intent or guilty knowledge or motive or the absence of necessity, was introduced to show the commission of another like offense to indicate a probability of the commission by the accused of the charged offense, or to show a disposition to commit it. As stated by Chief Justice Bigelow in *Commonwealth* v. *Shepard,* 1 Allen (Mass.) 575, evidence of other criminal acts "is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him, and for which he is on trial, but also because it may lead the jury to violate the great principle, that a party is not to be convicted of one crime by proof that he is guilty of another." I thus think prejudicial error was committed in admitting evidence of such claimed prior offense.

Now as to the second proposition: The accused requested the court to charge the jury that the woman on whom the operation was committed was an accomplice, and that as provided by Comp. Laws Utah 1917, § 8992, now R. S. 1933, 105-32-18, no conviction could be had on her testimony, unless she was corroborated by other evidence which in itself and without the aid of her testimony tended to connect the defendant with the commission of the charged offense. The court declined to so charge, and charged that *she was not an accomplice.* I think the failure to charge as requested was error. The accused also requested the court to charge that

the mother was an accomplice. The court declined to so charge, and submitted that question to the jury for their determination whether she was or was not an accomplice. I think no error *against the accused* was committed in such particular, for on the evidence the mother, as a matter of law, was not an accomplice and the court ought so to have charged the jury. Where the evidence on the subject is undisputed, as here it was, the question of whether a witness is or is not an accomplice is one of law for the court, and should so be declared and not left to the jury to determine it as matter of fact. *State V. Coroles,* 74 Utah 94, 277 P. 203, 204.

The woman on whom the abortion was committed, having freely and voluntarily consented thereto—indeed solicited, requested, and participated in the operation—was under the statute presently to be noted an accomplice, and the court should so have charged the jury. I am aware that a different rule was declared in the McCurtain Case. There the court held that the woman on whom the criminal abortion was performed was not an accomplice, though the operation was performed at her request and with her consent. Said the court:

"While, no doubt the female who requests or consents to a criminal operation with a view of producing an abortion is morally in fault, yet she is not guilty of the offense, and cannot be prosecuted under the statute. She therefore is not an accomplice."

Because of the statute, I think such holding was wrong and should be overruled. The statute, chapter 2 (of Penal Code) relating to "Abortion," consists of R. S. 1933, 103-2-1 and 103-2-2. The first section is:

"Every person who provides, supplies or administers to any pregnant woman, or procures any such woman to take, any medicine, drug or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than ten years."

184

The next section, 103-2-2, immediately following is:

"Every woman who solicits of any person any medicine, drug or substance whatever, and takes the same, or who submits to any operation or to the use of any means whatever, with intent thereby to procure a miscarriage, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than one nor more than five years."

There also is a statute, R. S. 1933, 105-32-14, that:

"Upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein, * * * the defendant shall not be convicted upon the testimony of the woman upon or with whom the offense was committed unless she is corroborated by other evidence."

Such sections are all in pari materia directly relating to the subject of "abortion." All of such sections and under the same heading were in existence and in full force when the alleged offense in the McCurtain Case was committed and tried. Comp. Laws Utah 1907, §§ 4226, 4227, 4858, and Comp. Laws Utah 1917, §§ 8118, 8119, and 8988. By the opinion in the McCurtain Case reference is made to what is now R. S. 1933, 103-2-1, but no reference whatever is made to any of the provisions of either what now are R. S. 1933, 103-2-2 or 105-32-14. In view of such statutory provisions, it is difficult to understand the statement made and conclusion reached in the McCurtain Case that the woman on whom the miscarriage or abortion was committed, though at her request and with her consent, "cannot be prosecuted under the statute. She therefore is not an accomplice." As is seen by R. S. 1933, 103-2-1, supra, it is provided that every person who provides or supplies any drug, etc., or uses any instrument or other means to procure a miscarriage of a pregnant woman (unless the same is necessary to preserve her life), is punishable by imprisonment in the state prison not less than two nor more than ten years; and by the following section, 103-2-2, both in pari materia, it further is provided that every woman who solicits and takes any drug, etc., or submits to any operation or to the use of any means what-

ever "with intent thereby to procure a miscarriage" (unless the same is necessary to preserve her life), also "is punishable by imprisonment in the state prison not less than one nor more than five years." Thus the one who employs or uses an instrument or other means, and the other who solicits, consents, and submits to the use of them, with the intent to procure a miscarriage or abortion, are both punishable, punishable for the *same criminal and unlawful act, procuring, or attempting to procure, the miscarriage or abortion,* the only difference being as to the degree of guilt and penalty.

It has been suggested that by the statement referred to in the McCurtain Case the court may have considered that the two sections, the one rendering the person punishable who uses the instrument or other means with intent to procure a miscarriage of a pregnant woman and the other section rendering the woman upon whom such means are employed punishable, if she consents and submits to the use of such means with intent to procure the miscarriage, are two separate offenses; the one because of the use of such instruments or means, and the other because consenting and submitting to the use of them to accomplish *the same criminal and unlawful act,* procuring the miscarriage.

In the first place, the language employed in the opinion does not justify any such view. The language is, that the woman on whom the miscarriage was committed, though at her request and with her consent, "cannot be prosecuted under the statute." It is more probable that the provisions of R. S. 1933, 103-2-2 or of 105-32-14, were not called to the attention of the court or otherwise were inadvertently overlooked. At least no reference is made to them in the opinion. In the next place, the fair import of the statute is, when both R. S. 1933, 103-2-1 and 103-2-2, supra, are considered together as they should be, that the person who with criminal intent employs an instrument or other means to procure a miscarriage of a pregnant woman, who with the same intent and purpose requests, consents, and submits to the

use of such means, that both are guilty, though in different degrees or penalties.

What was said by the court in the case of *State* v. *Carr*, 28 Or. 389, 42 P. 215, 216, may well here be said that:

"Under all the authorities, one who, being of mature years, and in possession of his ordinary faculties, knowingly and voluntarily co-operates with or aids and assists another in the commission of a crime, is an accomplice, without regard to the degree of his guilt," citing 1 Russell on Crimes 49; Wharton on Crim. Ev. § 440; Rice on Crim. Ev. § 319; Bishop on Crim. Proc. § 1159.

A witness is an accomplice in a crime not only where he may be indicted for the charged offense, but also where he may be charged with an offense directly connected with or growing out of the same criminal and unlawful act or transaction because of the part taken therein by him aiding and participating in the commission of it. *People* v. *Coffey*, 161 Cal. 433, 119 P. 901, 39 L. R. A. (N. S.) 704. To that effect in principle is the case of *State* v. *Coroles*, supra, where the definition of an accomplice as defined by Wharton, 1 Crim. Ev. (10th Ed.) § 440, p. 921, is approved, that:

"An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of the crime. The co-operation in the crime must be real, not merely apparent."

So, too, in the case of *State* v. *Wade*, 66 Utah 267, 241 P. 838, 839, where it is stated that "the essential characteristic of an accomplice is therefore criminal guilt," and where the statement in the case of *People* v. *Coffey*, supra, is quoted with approval, that:

"This, then, is the true test and rule: If in any crime the participation of an individual has been criminally corrupt he is an accomplice. If it has not been criminally corrupt he is not an accomplice."

Thus we have a statute, R. S. 1933, 103-26-41, that every person who gives or offers or promises to give to any witness, etc., to influence his testimony, is guilty of a felony; and by the next section, 103-26-42, that every person who

is a witness or about to be called as such, who receives or offers to receive, any bribe to influence his testimony, etc., is guilty of a misdemeanor. There also are other sections which provide that every person who gives, or offers to give, a bribe to influence a juror, a judicial or other officer, etc., to influence his decision or official action, etc., and every such person who receives, or agrees to receive, a bribe for such or other corrupt purpose, are both guilty and punishable. Says the author in 1 R. C. L. § 7, p. 161, that:

"It may be stated as a general rule, that a person offering, giving or paying a bribe is an accomplice of the person who receives it, particularly wherever the statutes make it a crime for the person to offer, give or pay, and a crime for a person to receive, a bribe. But wherever the statutes are silent either as to the person who offers, gives or pays the bribe, or as to the person who receives, the one is not an accomplice of the other."

The same doctrine is stated by the annotator in notes to *State* v. *Duff,* 144 Iowa 142, 122 N. W. 829, 24 L. R. A. (N. S.) 625, 138 Am. St. Rep. 279. Among the cases cited as supporting such view are: *People* v. *Coffey,* supra; *People* v. *Bissert,* 72 App. Div. 620, 76 N. Y. S. 1022, affirmed in 172 N. Y. 643, 65 N. E. 1120; *State* v. *Carr,* 28 Or. 389, 42 P. 215; *State* v. *Routzahn,* 81 Neb. 133, 115 N. W. 759, 129 Am. St. Rep. 675; *People* v. *Southwell,* 28 Cal. App. 430, 152 P. 939; *People* v. *Hyde,* 156 App. Div. 628, 141 N. Y. S. 1089; *People* v. *Winant,* 24 Misc. 361, 53 N. Y. S. 695; *State* v. *Smalls,* 11 S. C. 262; *Morawietz* v. *State,* 46 Tex. Cr. R. 436 80 S. W. 997; *Ruffin* v. *State,* 36 Tex. Cr. R. 565, 38 S. W. 169.

There are some cases to the contrary, chiefly, *State* v. *Wappenstein,* 67 Wash. 502, 121 P. 989, and *State* v. *Durnam,* 73 Minn. 150, 75 N. W. 1127. By the former it is stated that "the fact that witnesses are accomplices goes only to their credibility, and a conviction may be sustained upon their uncorroborated testimony," a rule in direct conflict with our statute (R. S. 1933, 105-32-18), and which by a long line of decisions does not obtain in this jurisdic-

tion. The latter is criticized and repudiated by Mr. Justice Henshaw in *People* v. *Coffey,* supra, whose definition of an accomplice was heretofore approved by this court.

It is well recognized by all of the authorities that an accessory before the fact is an accomplice (1 R. C. L., § 5, p. 159), and by nearly all the authorities that every one who advises, aids, and participates in the commission of a crime, whether as principal or as an accessory before the fact, is an accomplice (notes, *State* v. *Duff,* 144 Iowa, 142, 122 N. W. 829, 24 L. R. A. (N. S.) 625, 138 Am. St. Rep. 275). By R. S. 1933, 103-1-43, the statute makes all persons principals who under the common law were accessories before the fact.

Logically, I see no difference in cases of abortion where the person who uses an instrument or other means with criminal intent to produce a miscarriage of a pregnant and matured woman, and where she herself with the same criminal intent requests, consents, and submits to and participates in the commission of the miscarriage, *and where, as here, by statute both are punishable.* To say, as it is in some of the cases, that the woman is a "mere victim," is no answer. Usually in such cases the physician does not seek or solicit the woman nor inveigle her into his office for the purpose of producing an abortion upon her, or, by an overpowering influence, persuade or compel her to submit to such an operation without her consent. On the contrary, the woman usually, because of her poverty or misfortune, or to avoid exposure of her virtue or of her social standing, or for other reasons not desiring children, seeks and solicits the physician and requests and sometimes implores or pleads with him to relieve her from her pregnant condition. And where in such case he undertakes to do so, both under the statute are guilty and punishable.

Further, by 105-32-14, supra, that upon a trial for procuring, or attempting to procure, an abortion, the defendant shall not be convicted upon the testimony of the woman on whom the abortion was committed, unless her testimony is corroborated by other evidence, the Legislature clearly in-

dicated that the woman in effect is an accomplice and that, to convict, her testimony required corroboration. Unless the Legislature so regarded her, I see no purpose requiring corroboration of her testimony.

Again, it seems illogical to say that a nurse who aids and assists in the operation, the putative or natural father of the child, the husband or intended husband of the prosecutrix, her mother or other relative or person, who solicit, procure, and employ the physician to perform an abortion on a pregnant woman, or who advise, aid, and abet in its commission, are all accomplices, but the prosecutrix, a matured woman, who herself solicits, requests, and employs the accused to perform the abortion, and freely and voluntarily consents and submits to and aids in its commission, and who *by the statute declared to be a felon and punishable,* is not an accomplice. If because of public policy, or of necessity to obtain convictions, it be thought immunity should be granted a matured woman on whom an abortion, though at her request and consent, is committed and not to be regarded as an accomplice, and that, to convict, her testimony need not be corroborated, let such be the declaration of the Legislature, instead of declaring her a felon and punishable as it has and to convict the defendant of the commission of the offense requiring her testimony to be corroborated by other evidence.

In the absence of such specific statutes declaring a pregnant woman a felon and punishable for a miscarriage committed upon or with her consent and at her request, and that on a trial for procuring, or attempting to procure, an abortion, etc., "the defendant shall not be convicted upon the testimony of the woman upon or with whom the offense was committed unless she is corroborated by other evidence," courts divide as to whether the woman, under a general accomplice statute, such as R. S. 1933, 105-32-18, supra, of our statute, is or is not an accomplice. Most of the courts in such case holding that she was not an accomplice do so because she was not indictable or punishable for the commission of the offense, and hence could not be prosecuted un-

der the statute. Where, however, as here, she may be prosecuted, and where, as here, no conviction shall be had on her testimony, unless corroborated by other evidence, she, by the great weight of authority, possesses all the elements and general tests of an accomplice, and hence properly should be regarded as such.

I thus am of the opinion that the holding in the McCurtain Case that the woman on whom the miscarriage was committed, though at her request and with her consent, was not an accomplice, is contrary to the sections of the statute referred to, and therefore should be overruled.

Now as to the charge on the subject in the case in hand. The trial court as to the testimony of the mother stated the law to the jury on the subject of an accomplice as provided by the statute, Comp. Laws of Utah 1917, § 8992, now R. S. 1933, 105-32-18, supra, but left the question for the jury to determine whether she was or was not an accomplice. That was error. On the undisputed evidence, she was not an accomplice. The court ought to have so charged. Since the error was in the accused's favor, it thus was harmless.

Now as to the woman on whom the operation was committed: While the court stated to the jury the substance of 103-2-2 of the statute, supra, that every woman, etc., who submits to an operation with intent to procure a miscarriage, etc., was punishable by imprisonment as by such statute provided, the substance of 105-32-14 of the statute, supra, that upon a trial for procuring an abortion, etc., the defendant could not be convicted upon the testimony of the woman, etc., *unless she was corroborated by other evidence,* yet, in connection therewith, *further charged that she was not an accomplice,* and that such provisions of the statute could be considered by the jury *only as bearing on her credibility;* in other words, the court so put the proposition to the jury that, notwithstanding the statutes referred to, if the jury *believed the woman credible,* they could convict the defendant upon her testimony without corroboration. The evident effect of the statute, R. S. 1933, 105-32-14, is that

no conviction may be had on the uncorroborated testimony of the woman, whether the jury believed her testimony to be true or not. Such a proposition was not, but a contrary one, was put to the jury. Whether the court believed that the woman was or was not an accomplice, still, under the statute referred to, *he was required to charge that no conviction could be had on the uncorroborated testimony of the woman,* regardless of her credibility or the want of it. Nor did the court, as to the woman on whom the operation was committed, charge as provided by R. S. 1933, 105-32-18, supra, that no conviction could be had on the testimony of an accomplice, unless corroborated by other evidence, "which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense," etc., and as was charged by the court as to the mother, if the jury found her to be an accomplice; in other words, as to the testimony of the mother, the court left it to the jury to say whether she was an accomplice, but, as to the woman on whom the offense was committed at her request and with her consent, she was not an accomplice, and, though the court charged that under the statute she herself was punishable and that the defendant could not be convicted on her testimony unless she was corroborated by other testimony, yet took the very heart out of such provisions by charging that they could be considered by the jury only *as affecting her credibility,* and thus, if the jury believed her testimony credible, the defendant could be convicted, though her testimony was not corroborated, a proposition in the very teeth of the statute.

It is fairly evident that the court, because of the ruling in the McCurtain Case, felt constrained to charge the jury that the woman on whom the alleged offense was committed *was not an accomplice,* nevertheless deemed it necessary to charge with respect to the statutes referred to, but erroneously charged the purpose—only as affecting the credibility of the woman on whom the offense was committed—for which such provisions could be considered. The charge on

the subject is inconsistent and not in accordance with the statute forbidding a conviction upon the uncorroborated testiony of the woman, and had the undoubted effect to misdirect and mislead the jury to the prejudice of the defendant.

I thus am of the opinion, for the reasons stated, that the judgment of the court below should be reversed and the case remanded for a new trial.

MOFFAT, Justice (concurring).

I concur in the opinion of the court in reversing the judgment of the trial court and remanding the cause for a new trial.

I, however, concur in the analysis of the problems presented as made by Mr. Chief Justice STRAUP, and am in harmony with the position and results reached by him in his concurring opinion.

ELIAS HANSEN, Justice (concurring in results).

I concur in what is said by Mr. Justice FOLLAND as to the admissibility of evidence touching the alleged attempt of the defendant to commit an abortion other than that charged in the information. There is considerable confusion in the authorities as to the admissibility of such evidence and as to the stage of the trial when, if at all, the same is admissible. We should not introduce such confusion into the law of this jurisdiction by the announcement of any other or different doctrine than that announced in the McCurtain Case.

In my opinion, it is not necessary to determine in this case whether the prosecutrix was or was not properly characterized as an accomplice in the court's instructions to the jury. Had the trial court given defendant's requested instruction No. 33, the jury need not have been concerned with the legal characterization that should be applied to the prosecutrix. Defendant's requested instruction No. 33 reads as follows:

"You are instructed that every woman who submits to any operation, or the use of any means whatever with intent thereby to procure a

miscarriage, unless the same is necessary to preserve her life, is guilty of a felony and is punishable by imprisonment in the state prison not less than one nor more than five years.

"And you are further instructed that it is the law of this State that upon the trial of a person accused of procuring or attempting to procure an abortion, or miscarriage, of any woman, such person shall not be convicted upon the testimony of the woman upon or with whom the offense shall have been committed unless she is corroborated.

"And you are further instructed that the corroborative evidence in such case is not sufficient to convict the defendant unless such evidence in itself, and without the aid of the testimony of the woman, tends to connect the defendant with the commission of the specific offense charged in the information, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

One of the assignments of error is that "the court erred in refusing to give defendant's request No. 33, to which defendant excepted." Nowhere in the instructions given did the trial court inform the jury as to the degree or extent of corroboration of the testimony of the prosecutrix exacted by the law before the accused could be found guilty. Merely to inform the jury that her testimony required corroboration without informing them as to the nature of the corroboration required could be of but little, if any, aid to the jury, and might well have misled them. It was not necessary for the jury to know whether the prosecutrix was or was not properly designated as an accomplice of the accused, but he was entitled to have the jury instructed that her testimony must be corroborated to the extent and in the manner asked for in the requested instruction heretofore quoted.

Because of the failure of the trial court to give that requested instruction, I concur in the order reversing the judgment and directing that the accused be granted a new trial.

FOLLAND, Justice (dissenting).

I dissent as to the result reached and from the views expressed in part IV of the prevailing opinion by Mr. Justice

EPHRAIM HANSON, wherein it is held that evidence of another attempted abortion is admissible only in rebuttal. I am in accord with the view that such evidence is relevant to the issue of intent, but cannot concur in the holding that its admissibility is limited to rebuttal, and then only when the act charged is admitted by the defendant and justification for the act is claimed.

As a general rule, proof of the commission by defendant of another offense wholly unconnected with that for which he is on trial must be excluded. This rule, however, is subject to the exception, among others, that, whenever motive, knowledge, or intent constitutes an ingredient of the offense charged, evidence is admissible of acts or conduct of the accused which tends to establish such motive, intent, or knowledge, notwithstanding the fact it may disclose another crime. The author of Underhill on Crim. Ev. (2d Ed.) p. 602, speaking with reference to the charge of abortion, says:

"An abortionary intent must be proved. * * * Evidence that the accused prior, or subsequently, to the act alleged, had attempted to procure an abortion on the same woman, using the same or different means, or that on other occasions he had operated on other women, or held himself out as being able and willing to commit an abortion, is always admissible to show his purpose and intention in connection with the act charged."

Mr. Wigmore in 1 Wigmore on Ev. (2d Ed.) at page 667, speaking of abortion, says:

"The intent principle (ante, Sec. 302) is available; other occasions of using such instruments or drugs, whether prior or subsequent, tend to negative an innocent intent."

In *State* v. *Rowley*, 197 Iowa 977, 195 N. W. 881, 882, the court says:

"The fact that appellant may have performed other similar acts closely connected in time with the act in question, and that such acts were performed with the intent to produce miscarriage, and that the same was not necessary to save life, would have a legitimate bearing upon the question of the intent of appellant in the instant case, if

the jury believed the evidence of the state to the effect that the act was in fact performed."

The author of 2 Jones' Comm. on Ev. (2d Ed.) p. 1161, in speaking of the relevancy of other acts for the purpose of proving intent, gives reasons therefor as follows:

"The intention with which a particular act is done often constitutes the burden of the inquiry, and to prove the intent it becomes necessary, in many instances, to extend the examination beyond the particular transaction concerning which the accused is upon trial. For the purpose, therefore, of proving intent, not of proving the act itself, it is often permissible to show other criminal transactions of the same sort springing from like mental condition. Bishop, in his work on Criminal Procedure, after giving various illustrations as to the proper application of this rule in criminal practice, sums up his conclusion in the following words:

" 'It is, that though the prisoner is not to be prejudiced in the eyes of the jury by the needless admission of testimony tending to prove another crime, yet whenever the evidence which tends to prove the other crime tends also to prove this one, not merely by showing the prisoner to be a bad man, but by showing the particular bad intent to have existed in his mind at the time when he did the act complained of, it is admissible; and it is also admissible, if it really tends thus, as in the facts of most cases it does not, to prove the act itself.' "

Notwithstanding the general rule that this kind of evidence is relevant to the issue of intent, the cases are not in accord as to its application, as already shown by Mr. Justice EPHRAIM HANSON. One line of cases holds that, where the element of intent is an essential ingredient of the crime charged, and must be proved by the state, evidence of other abortions, or attempted abortions, is admissible, because relevant to that issue, as part of the state's case in chief. *State* v. *McCurtain*, 52 Utah 63, 172 P. 481, 482; *Clark* v. *People*, 224 Ill. 554, 79 N. E. 941; *People* v. *Hagenow*, 236 Ill. 514, 86 N. E. 370; *People* v. *Schultz-Knighton*, 270 Ill. 238, 115 N. E. 140; *People* v. *Hobbs*, 297 Ill. 399, 130 N. E. 779; *State* v. *Newell*, 134 Minn. 384, 159 N. W. 829; *State* v. *Rowley*, 197 Iowa 977, 195 N. W. 881; *State* v. *Brown*, 3 Boyce (Del.) 499, 85 A. 797, 800; *State* v. *Doty*, 167 Minn.

164, 208 N. W. 760, 761; *Rex* v. *Graham,* 9 B.R.C. 129 (1915) Vict. L. R. 402; *Rex* v. *Bond,* 9 B. R. C. 92 (1906) 2 K. B. 389. Other cases hold that evidence of other abortions, or attempted abortions, becomes relevant, competent, and material only when the defendant has testified or otherwise indicated that he admits the act charged, but denies criminal intent by assigning some other excuse or justification for doing the act. *People* v. *Seaman,* 107 Mich. 348, 65 N. W. 203, 61 Am. St. Rep. 326; *People* v. *Lonsdale,* 122 Mich. 388, 81 N. W. 277; *People* v. *Hodge,* 141 Mich. 312, 104 N. W. 599, 113 Am. St. Rep. 525; *People* v. *Hickok,* 56 Cal. App. 13, 204 P. 555; *Clark* v. *Commonwealth,* 111 Ky. 443, 63 S. W. 740.

I am not inclined to accept as law the rule announced in the prevailing opinion, for the reason that I think it basically unsound and not supported by the weight of authority, and for the further and more important reason that this court is committed to the contrary doctrine by its decision in *State* v. *McCurtain,* supra.

The defendant Cragun was charged with using an instrument on the womb and body of the prosecutrix with intent to procure a miscarriage; the procuring of an abortion being then and there unnecessary for preservation of the life of such woman. By the information and the statute, the intent with which the instrument was used, that is, to procure a miscarriage not necessary for the preservation of life, is an essential ingredient of the charge. On plea of not guilty, each of the essential ingredients was put in issue and the burden cast on the state to prove each element of the charged offense. The gravamen of the offense is the criminal intent with which the instrument was used. It was not sufficient to prove merely the use of the instrument, because it may have been used for a proper or lawful purpose. If the act be established and the intent to bring about a miscarriage be clearly shown, yet the state must prove that the procuring of the miscarriage was not necessary to save the life of the pregnant woman. Neither of

these elements can be ignored by the state nor proof thereof delayed until a defense is interposed by the defendant. True, there was some testimony elicited by the state, without evidence of another attempted abortion, from which the jury might have found criminal intent, but surely, where the burden is on the state to make its case beyond a reasonable doubt, it is not consistent to say it must rest its case on a part only of the relevant evidence available to it.

This court is committed to the doctrine that in an abortion prosecution the element of criminal intent is an essential ingredient of the offense charged, and that the burden is cast on the state of proving such element by adequate and substantial evidence in its case in chief. In *State* v. *Wells*, 35 Utah 400, 100 P. 681, 683, 136 Am. St. Rep. 1059, 19 Ann. Cas. 631, defendant was charged with the crime of abortion. He contended on appeal that the evidence was insufficient to show it was not necessary to procure the miscarriage in order to preserve life. The question was whether this element was an essential ingredient of the crime charged which the state must prove in its case in chief. The court, in passing on that question, said:

"Under such a statute as this the athorities generally hold, and we think correctly, that it is essential for the state to allege and prove that the production of the miscarriage was not necessary to save the woman's life, and that the burden of proving such fact is upon the state. * * * In all trials for crime the prosecution must prove to the satisfaction of the jury that a crime has been committed before it proceeds to inquire as to whom is the criminal. What is the corpus delicti of the crime here charged? The state sufficiently proved that the woman was pregnant; that the defendant performed an operation on her, and that she, in consequence of such operation, had a miscarriage. But the proof of such facts does not establish the crime of abortion as defined by the statute. Under such a statute it was also essential to prove that the miscarriage was not necessary to preserve the life of the woman."

In criticizing cases holding to the contrary, the court said:

"In so doing we think that the court, notwithstanding its expressions in the opinion, necessarily held with the New York court (*People* v.

*McGonegal,* supra) that the negative in the statute is matter of defense, and that the affirmative must be established by the accused, a holding which we think is against the great weight of authority under statutes such as we have, making the negative an essential element of the offense."

This is the general rule as stated in 1 R. C. L. p. 73:

"When the statute punished the administration of drugs or use of an instrument with the intent to produce an abortion, the criminal intent with which a substance is administered, or an instrument is used, is the important consideration in determining the guilt or innocence of the accused."

The necessary ingredients of the offense charged must be proved by the state in its case in chief, or a judgment of conviction cannot be affirmed. *State* v. *Wells,* supra.

Where the defendant produces evidence which tends to show an admission that he did the act, but that it was done with innocent intent or in pursuance of a lawful purpose, no new issues are brought into the case. The most that is done is to set at rest any serious question as to the commission of the act, that is, the use of the instrument on the body of the woman, and leaves the issue of intent and purpose to save life as the important issue to be determined by the jury. Notwithstanding defendant's testimony or admission, it is still for the jury to find from all the facts and circumstances in evidence whether each of the essential elements has been proved beyond a reasonable doubt.

The state ought not to be restricted in its proof by a rule which says that, if there is any evidence already introduced which tends to prove intent, then no other relevant evidence on the same issue may be produced until the defendant introduces evidence tending to dispute part of the state's charge. Mr. Wigmore has indicated how the matter should be handled before the jury in 1 Wigmore on Ev. (2d Ed.) p. 615:

"It will be seen that the peculiar feature of this process of proof is that the act itself is assumed to be done—either because (as usually) it is conceded, or because the jury are instructed not to con-

sider the evidence from this point of view until they find the act to have been done and are proceeding to determine the intent."

The cases already cited support the view that, where the act itself is not admitted, the jury should be carefully instructed that evidence of other abortions, or attempted abortions, is limited to the question of intent, and is not to be considered in determining whether or not the defendant committed the act charged. *State* v. *Bowen,* supra. The following is pertinent from *State* v. *Doty,* supra:

"There was evidence of two other abortions performed about the same time. Such evidence is competent in this class of cases for the purpose of showing a willingness and readiness, or a guilty or criminal intent. 1 C. J. 329; 1 Wig. Ev. (2d Ed.) §§ 302, 359; *State* v. *Newell,* 159 N. W. 829, 134 Minn. 384, and cases cited. Such evidence is to be restricted to the limited purpose for which it is received. It is to be distinguished from evidence objectionable as proving merely other crimes. The danger of it is that a jury may convict because, though guilt of the crime charged is not proved, it is satisfied to convict because of other crimes. The court carefully cautioned the jury as to purpose of the testimony and how it should be considered."

Here the jury was properly instructed as to the limited purpose for which the evidence was admitted.

Coming now to the case of *State* v. *McCurtain,* supra: This case is referred to in the prevailing opinion, but it is there said that it is not in point. I am inclined to believe it is of controlling importance in reaching a decision in the instant case. There the state in its case in chief introduced evidence of an attempted abortion on another woman. It was admitted by the trial court as relevant to the issues made by the plea of not guilty. After the state rested, the defendant took the stand and admitted operating on the prosecutrix, but denied criminal intent by asserting the operation was performed to save life. This court, in holding that no error had been committed in admitting such evidence, said:

"The question of intent was therefore the most prominent feature of the case. It has frequently been held in prosecutions of this character that for the purpose of proving that the operation was in fact

criminal, and as showing the intent of the accused, the state may show that other similar operations were performed upon other pregnant women. Among the numerous cases in which the courts have so held we refer to the following: [Citing cases.]"

The fact that the evidence was admitted in the state's case and not in rebuttal is not clearly disclosed in the opinion of the court, but is shown by reference to the abstract in the case. Abstracts and Briefs, No. 3157. No language is found in that opinion which supports, or tends to support, the view that the evidence objected to was not admissible except in rebuttal. True, the court said, "The question of intent was therefore the most prominent feature of the case." It was made "most prominent" because the defendant by his testimony admitted the act, but denied criminal intent. He had, however, by his plea of not guilty denied all the elements which had been charged. By his testimony he merely shifted emphasis from the act itself to the intent with which it was committed. The McCurtain Case is in all respects in point with the case before us, with the exception that there the defendant took the witness stand after the state rested, while here the defendant did not testify or introduce any evidence. I cannot see that such fact should control the question of whether this class of evidence is relevant to an issue in the case. The utmost confusion would result if it be held that, notwithstanding this class of evidence is relevant to a material issue which must be proved by the state, yet it may become irrelevant and incompetent unless the defendant interposes by evidence a certain defense. The prevailing opinion seeks to avoid such confusion by adopting the rule that such evidence is not relevant to the issue of intent unless and until the defendant makes it so by an admission of the act and the offering of some excuse or justification therefor.

The case of *State* v. *Brown,* supra, is cited by Mr. Justice EPHRAIM HANSON in support of the views there expressed. The court, however, in that case held that evidence of an abortion on another woman was admissible, but re-

stricted its application by the jury to the question of intent, as indicated by the following quotation:

"In the present case the defendant is charged with giving medicine and using an instrument with the intent to procure a miscarriage. The indictment, as well as the statute upon which it is based, make the intent with which the medicine is administered and the instrument is used, an essential part or ingredient of the charge, and it is incumbent upon the state to prove such specific intent before a conviction can be secured. The very gravamen of the offense charged being the intent with which the defendant committed the acts alleged, it is not sufficient to prove the giving of the medicine because it may be given for a proper purpose. It is not enough to prove the use of the instrument merely because such an instrument might be employed for a legitimate purpose. The specific intent or purpose to produce a miscarriage must be proved before the guilt of the accused is established, and the performance of similar operations on the same or other women about the same time, we think are admissible. Such operations, however, are not admissible to prove that the defendant committed the acts charged, viz., gave the medicine and used the instrument mentioned in the indictment, but are only to be considered by the jury in determining the intent with which the acts charged were done, when the jury are satisfied by other testimony that the medicine was given, or the instrument was used by the defendant in the manner charged in the indictment.

"From the cases cited such appears to have been the position taken by the courts of many states, and is recognized generally by the text writers. Indeed, abortion, or the attempt to procure miscarriage, are offenses in the trial of which evidence of similar acts has been generally admitted. The rule permitting the introduction of such evidence is applicable to such cases because the law makes the intent with which the alleged act is done, or attempted, an essential ingredient of the charge, and places the burden upon the prosecution to prove the specific intent. [Citing cases.]"

The quotation from *Clark* v. *Commonwealth*, 111 Ky. 443, 63 S. W. 740, 745, shows on its face it is not an authority here, since the Kentucky court contrary to the decision of this court in *State* v. *Wells*, supra, had held it not incumbent on the state to prove want of necessity to save life. It was there said:

"And it has been held in some instances, in prosecutions for criminal abortions, that it is incumbent upon the commonwealth to show as a

part of its case that the abortion was not necessary in order to save the life of the mother. It seems that this court has not recognized the rule last mentioned."

The extreme to which this doctrine leads is shown when it is said that, if the state "be unable to prove the intent of the defendant without proving the commission, or attempted commission, by him on other women of separate and distinct offenses," then such evidence is admissible, but, if the intent can be proved without such evidence, it is not admissible. This would make the question of relevancy dependent on whether the state had other evidence which would tend to prove the issue. If the defendant pleads not guilty and does not take the stand in his own behalf, then such evidence is irrelevant to the issue of intent, but, if he takes the stand and admits the act, but denies criminal intent, then such evidence is relevant to the issue of intent. Surely the question of relevancy of evidence does not rest on such shifting grounds.

I concur with the views expressed by Mr. Justice EPHRAIM HANSON in parts I, II, and III of his opinion.

The court instructed the jury the statute required that the testimony of the woman upon whom the offense was committed shall be corroborated, and that a verdict of guilty could not be found unless such corroboration were present. There is in the record ample corroboration to satisfy the statutory requirements under either 105-32-18 or 105-32-14, R. S. 1933; hence I believe there was no prejudicial error in failing to further instruct with respect to corroboration. *State* v. *Troiani*, 129 Wash. 228, 224 P. 388.

The judgment should be affirmed.